IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


PARAGON MOLDING, LTD.,        :
*et al.*

                             :

        Plaintiffs,

                           :   Case No. 3:05cv422

          vs.

                         : JUDGE WALTER HERBERT RICE

SAFECO INSURANCE COMPANY,
*et al.*                           :

        Defendants.            :

---

DECISION AND ENTRY SUSTAINING MOTION FOR SUMMARY
JUDGMENT BY MILLER INDUSTRIES, L.L.C. (DOC. #81, AS
AMENDED BY DOC. #83 AND DOC. #88); SUSTAINING, IN PART,
AND OVERRULING, IN PART, MOTION FOR SUMMARY JUDGMENT
BY ROY RHODES AND JIMMIE RHODES (DOC. #82); OVERRULING
PARAGON'S MOTION TO DISMISS (DOC. #93); SUSTAINING, IN
PART, AND OVERRULING, IN PART, MOTION FOR SUMMARY
JUDGMENT BY THE ALEX N. SILL COMPANY (DOC. #95) AND
MOTION FOR SUMMARY JUDGMENT BY PARAGON MOLDING, LTD.
(DOC. #100); OVERRULING MOTION FOR SUMMARY JUDGMENT BY
ROY AND JIMMIE RHODES (DOC. #135); AND SUSTAINING, IN
PART, AND OVERRULING, IN PART, MOTION FOR SUMMARY
JUDGMENT BY JPMORGAN CHASE BANK, NA (DOC. #171); ORDER
TO CLERK OF COURTS TO DISTRIBUTE CERTAIN SUMS TO
VARIOUS INTERPLEADER PARTIES; AEIC GRANTED LEAVE TO FILE
MOTION FOR SUMMARY JUDGMENT, AS TO BAD FAITH CLAIM

---

On January 22, 2005, Plaintiff Paragon Molding, Ltd. ("Paragon"), had a fire

at its facility, wherein it suffered damage to the real estate and the inventory for its

molding and game calls business. Doc. #1.  As a result, Paragon filed suit against

American Economy Insurance Company ("AEIC") (misdenominated as Safeco

Insurance Company), claiming that AEIC wrongfully withheld proceeds from a fire insurance policy from Paragon. Id.; Doc. #44. In the meantime, AEIC deposited with this Court fire insurance proceeds in the sum of $1,334,813.[1] Not. Order dtd. May 28, 2010. Still outstanding between Paragon and AEIC is a coverage dispute regarding electronic data, processing/storage, and outdoor property coverage relative to the loss of trees and shrubs and also a bad faith claim. Doc. #164 at 4-5.

Paragon claims an interest in all of the fire insurance proceeds that are not related to the real property and/or building damage, namely $684,772, as coverage for items owned by Paragon and/or business interruption, as well as 15% of said sum for attorney's fees. Doc. #100 (Paragon/Miller Mem. Spt); Doc. #149 at 2 (Paragon/ Miller Response to Court's Order); Doc. #164. The following parties have intervened in this suit, alleging various claims, cross-claims and counter-claims with regard to the insurance proceeds, to wit:

- Miller Industries, L.L.C. ("Miller"): As owner of the real estate occupied by Paragon, Miller claims entitlement to that portion of the insurance proceeds that corresponds to the value of the damage to the real property, in the sum of $650,041. Doc. #43 (Miller Mot. Intervene); Doc. #122 (Miller Compl.); Doc. #164. Miller (along with Paragon) concedes that its claim is subject to the 15% claim for payment of its attorney's fees. Doc. #100 (Paragon/Miller Summ. J. Mot.); Doc. #164. As previously

---

[1]Paragon earlier received from AEIC fire insurance proceeds in the amount of $793,405 (which sum is not a subject of the present dispute). Doc. #95-1 (Werner Aff.) ¶ 5. Further, the Court has rounded all of the amounts involved in this equitable action to the nearest dollar, for the sake of simplicity.

clarified by this Court, Miller is an interpleader <u>defendant</u> (rather than a plaintiff, as it styles itself), just as the other intervening parties in this litigation.[2] Doc. #138 at 7.

- <u>The Alex N. Sill Company</u> ("Sill"): Sill entered into a Loss Consultants and Appraisers Agreement with Paragon, wherein Sill agreed to assist in the preparation of the fire insurance claim and Paragon assigned and conveyed to Sill 7.5% of the total proceeds related to that claim. Doc. #47 (Sill Mot. Intervene); Doc. #51 (Sill Am. Counter/Cross Claims); Doc. #51-1 (Agreement between Sill & Paragon); Doc. #148 (Sill Am. to Counter/Cross Claims). As a result of Paragon's earlier receipt of fire insurance proceeds (not a subject of the present interpleader action), Paragon previously paid Sill $60,949, in accordance with a settlement agreement reached by those parties,[3] while Sill claims that it is entitled to 7.5% of the additional amount deposited with the Court, to make it whole, in accordance with both the original and settlement agreements. Docs. #51, #148 #150.

- <u>Roy Rhodes</u>:[4] On September 25, 2004 (four months prior to the

---

[2]As previously explained, "an interpleader plaintiff is the 'stakeholder' that holds title to the fund in dispute. In this case, the stakeholder that holds title to the fund in dispute is Paragon. Paragon is, thus, the only proper Plaintiff." Doc. #138 at 7 (referring back to previous citation to <u>United States v. High Tech. Prods.</u>, 497 F.3d 637, 641 (6th Cir. 2007), on page 5).

On a related note, the Court previously instructed each party to either waive any conflict of interest Paragon and Miller may have as a result of Don Little representing both parties or explain the basis for the party's disagreement as to the same. <u>Id.</u> at 10. All parties have now filed memoranda waiving any such conflict of interest. Doc. #144 at 1-2 (waiver by Paragon and Miller); Doc. #145 at 2 (waiver by Roy and Jimmie Rhodes); Doc. #150 at 1 (waiver by Sill); Doc. #151 at 2 (waiver by Chase).

[3]As indicated, Paragon previously received $793,405, in fire insurance proceeds, as partial settlement of its claims against AEIC. Doc. #95-1 (Werner Aff.) ¶ 5. That sum is not part of the dispute between the parties to this litigation.

[4]Roy Rhodes also asks for injunctive relief, requesting that the Court require AEIC "to pay the proceeds of Paragon's fire-insurance claim into the Court, as

3

fire), Paragon purchased a business known as "Roy Rhodes Championship Calls." Doc. #40 (R. Rhodes Mot. Intervene); Doc. #42 (R. Rhodes Counter/Cross Claims) ¶ 3; Doc. #82-2. Pursuant to the purchase agreement, Roy Rhodes maintained an interest in "35% of the value of the Roy Rhodes Championship Calls division" of Paragon. Id. ¶ 5; Doc. #42-1 (Contract) ¶ 6(c). Roy Rhodes alleges that the Roy Rhodes Championship Calls Division of Paragon constituted 98% of the non-realty assets that were destroyed or damaged by the fire and, thus, he is entitled to 35% of the corresponding portion of the insurance proceeds. Doc. #42 at 1-4. Further, Roy Rhodes is in possession of a state court judgment against Paragon for $258,125, as a result of a jury verdict in his favor, regarding a breach of employment contract claim, and also claims entitlement to such sum from the insurance proceeds. Id. at 4-6.

- <u>Jimmie Rhodes</u>:[5]  Also intervening is Roy Rhodes's father, Jimmie Rhodes. Doc. #66 (J. Rhodes Mot. Intervene).  Jimmie Rhodes claims to be entitled to $50,000 plus 6% interest (payable beginning October 8, 2009),[6] pursuant to a promissory note previously executed in his favor, in connection with the aforementioned purchase by Paragon of Roy Rhodes Championship Calls. Doc. #67 (J. Rhodes Counter/Cross Claim) ¶¶ 7-11; Doc. #82 (J. Rhodes Summ. J. Mot.) at 5-6; Doc. #164.

---

would be done in the event of an interpleader, rather than directly to Paragon" and also requesting that the Court "prohibit[] Paragon from obtaining possession of any proceeds until all claims and judgments of Mr. Rhodes against Paragon have been paid." Doc. #42 ¶ 23.  The Court's decision to require deposit of the insurance proceeds with the Court and to determine the distribution of the same, pursuant to its analysis of this case "in the nature of interpleader" nullifies Roy Rhodes's request for injunctive relief.

[5]Jimmie Rhodes also asks for injunctive relief, in the same fashion as Roy Rhodes, as noted above. Doc. #67 ¶ 14 (also asking the Court not to distribute proceeds to Sill).  For the reasons articulated above, the Court considers this request to be moot.

[6]The details of this claim will be discussed in more depth *infra*.

● **JPMorgan Chase Bank, NA ("Chase")**: Chase intervenes, claiming three different interests in the fire insurance proceeds. Doc. #86 (Chase Mot. Intervene). All of said claims have been reduced to judgment in state court proceedings, to wit: (1) $234,811, plus interest at 8.75%, attorney's fees and other charges, pursuant to a promissory note/mortgage executed by Miller and guaranteed by Paragon; (2) $205,333, plus interest at prime + 3%, attorney's fees and other charges, pursuant to a non-mortgage promissory note executed by Paragon; (3) $89,528, plus interest at 10.24%, attorney's fees and other charges, pursuant to a non-mortgage promissory note executed by non-party Captiva Holdings, LLC ("Captiva") and guaranteed by Paragon. Doc. #91 (Chase Counter/Cross Claims).

All parties have agreed that this case should proceed in the nature of interpleader, as to the $1,334,813 sum originally deposited with this Court. Doc. #164 at 2-3. Further, Paragon has now agreed to include in the interpleader action any future funds distributed to the Court by AEIC, pursuant to the coverage claim that is still pending on the insurance policy (but not as to the bad faith claim that is still pending). Doc. #169; contrast Doc. #164 at 3 n.2 (noting that Paragon had previously not agreed to proceed in the nature of interpleader with regard to the insurance claim still in dispute).

With regard to the interpleader action, there are currently pending before this Court seven dispositive Motions, to include six Motions for Summary Judgment (Documents #81, #82, #95, #100, #135 and #171, with two Amended Motions for Summary Judgment (Documents #83 and #88, both amending Document #81)) and one Motion to Dismiss (Document #93). The following is a summary of the pertinent information about each of these Motions:

1. <u>Motion for Summary Judgment by Roy and Jimmie Rhodes, Against Miller (Doc. #135)</u>.[7]  Roy and Jimmie Rhodes assert that Miller's claim should be dismissed, given that it arose out of a "fraudulent transfer" between Miller and Paragon.

2. <u>Motion for Summary Judgment (and Motion for Distribution of Funds) by Miller, in Favor of Itself, Sill and Chase (Docs. #81, as amended by Docs. #83, #88)</u>.[8]  Miller claims that, as owner of the real estate that housed Paragon's business, it is entitled to $601,288, which is 92.5% (allowing Sill to have 7.5%) of $650,041, the amount of the life insurance proceeds associated with the damage to the building, trees, shrubs and plants.  Miller also supports Chase's mortgage claim for $234,812, plus interest and attorney's fees.  (Likewise, Miller joins Paragon in moving for payment of its attorney's fees, as will be further discussed herein.)

3. <u>Motion for Summary Judgment by Roy and Jimmie Rhodes, in Favor of Themselves</u>[9] <u>(Doc. #82)</u>.[10]

   - <u>Roy Rhodes's Claim for 35% Interest in "Roy Rhodes Championship Calls"</u>.  Roy Rhodes alleges that a contract between the parties called for him to have a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon,

---

[7]The parties have filed the following memoranda in relation to this Motion: Documents #135, #152 (Rhodeses); Documents #143, #161 (Miller).

[8]The parties have filed the following memoranda in relation to this Motion: Documents #81, #83, #85, #88 (Miller); Documents #97, #121 (R/J Rhodes); Document #105 (Paragon); and Document #171 (Chase).

[9]The Rhodeses also argue that, since there is enough money to pay both themselves and Sill, that Sill's cross claim against the Rhodeses should be dismissed as moot. Doc. #82 at 8-9.  The Court assumes that since Chase intervened subsequent to the filing of this Motion (thus, making it questionable as to whether there is enough money to pay all intervening creditors), that this argument is no longer valid.

[10]The parties have filed the following memoranda in relation to this Motion: Documents #82, #98, #121, #132, #154 (R/J Rhodes) and Documents #89, #102, #160 (Paragon).

which entitles him to 35% of 98% of the value of the insurance proceeds that are attributable to the non-realty property.

- Roy Rhodes's State Court Judgment for $258,125. With regard to Roy Rhodes's state court judgement (in the sum of $258,125, for the breach of employment contract claim), Rhodes argues that, as a judgment creditor, he has the right to compel payment of this claim.[11]

- Jimmie Rhodes's Claim for $50,000 Plus 6% Interest. Jimmie Rhodes argues that, as a general creditor of Paragon, he is entitled to payment of $50,000 plus 6% interest (payable beginning October 8, 2009), pursuant to the terms of an agreement between the parties.[12]

4. Motion to Dismiss Claims of Roy and Jimmie Rhodes by Paragon (Doc. #93).[13] As to Roy Rhodes's claim for the 35% interest in the "Roy Rhodes Championship Calls" division of Paragon, Paragon argues that this claim has already been decided adversely by a state court and, thus, should be dismissed.[14]

---

[11]There has been an inordinate amount of briefing directed at the procedural status of the Rhodeses' state court claims. E.g., Docs. #89, #98, #102, #121, #132, #154, #160. It is the Court's understanding that all state court proceedings are now final (and not on appeal), with regard to the issues that are pending before this Court pertaining to Roy Rhodes. See Doc. #152 at 3 (noting that the only portion of the state court judgment that is on appeal is the portion pertaining to the claim(s) of Jimmie Rhodes) (citing Doc. #152-1 (Kozar Aff.) ¶ 4); Docs. #152-1, #152-2, #154, #160.

[12]As noted infra, it is the Court's understanding that there is still an appeal pending in the state court proceeding, with regard to Jimmie Rhodes's claim(s). Docs. #152 at 3; #152-1, #152-2, #154, #160. The same will be further discussed infra.

[13]The parties have filed the following memoranda in relation to this Motion: Documents #93, #128, #130 (Paragon) and Documents #114, #132 (Rhodeses).

[14]Paragon also argues that certain of the Rhodeses' claims are still pending on appeal, in the state court. As previously noted, however, it is the Court's understanding that all state court proceedings are now final, with regard to the

5. Motion for Summary Judgment by Sill, in Favor of Itself (Doc. #95).[15] As to Paragon, Sill argues that its 7.5% claim for insurance adjuster services has been fixed by agreement between those two parties. As to the other intervening parties, Sill argues that it should have priority under the "substantial benefit doctrine", given that its efforts in securing the payment under the insurance policy have bestowed substantial benefits on all the intervening parties.

6. Motion for Summary Judgment by Paragon and Miller, in their favor (attorney's fees) (Doc. #100).[16] Pursuant to an agreement entered into between Paragon/Miller and Attorney Don Little wherein Paragon/Miller agreed to pay Little 10% of any proceeds recovered from AEIC in this case and which those parties later increased to 15% "to cover the work necessary in connection with the [Rhodeses'] entry into the case," Paragon/Miller argue that they are entitled to 15% of the insurance proceeds for payment of attorney's fees.

7. Motion for Summary Judgment by Chase, in Favor of Itself (Doc. #171).[17] Chase claims that, as a creditor of Paragon/Miller, it is entitled to payment on its three outstanding notes (for principal

---

issues pertaining to Roy Rhodes. See Doc. #152; Docs. #152-1, #152-2, #154, #160. With regard to Jimmie Rhodes's claim, the Court will consider this challenge when ruling on Jimmie Rhodes's Motion for Summary Judgment, wherein Paragon asserts a more detailed argument, in its memorandum in opposition to the same. See infra Section II(B)(2)(c).

[15]The parties have filed the following memoranda in relation to this Motion: Documents #95, #133 (Sill); Document #116 (R/J Rhodes); and Document #119 (Chase).

[16]The parties have filed the following memoranda in relation to this Motion: Documents #100, #124, #126, #127 (Paragon/Miller); Document #117 (R/J Rhodes); and Document #118 (Chase).

[17]This Motion was originally filed at Document #99 and later corrected at Document #117 and includes a memorandum in opposition to Miller's Amended Motion for Summary Judgment. In response, Paragon filed a memorandum at Document #105.

amounts of $234,812, $205,333, and $89,528), plus interest, attorney's fees and costs.

The Court will begin by reviewing the standards that guide its decisions on Motions for Summary Judgment and Motions to Dismiss. It will then consider the merits of each of the dispositive Motions, in turn, followed by a summary discussion of its decisions pertaining to the distribution of the disputed insurance proceeds.


I.    Legal Standards

      A.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

9

(1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence

10

to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.


B.    Motion to Dismiss Standard

In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth Circuit reiterated the fundamental principles which govern the ruling on a motion to

11

dismiss under Rule 12(b)(6):

> The district court's dismissal of a claim pursuant to Rule 12(b)(6) of
> the Federal Rules of Civil Procedure is also reviewed de novo.
> Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999),
> overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S.
> 506 (2002).  When deciding whether to dismiss a claim under Rule
> 12(b)(6), "[t]he court must construe the complaint in a light most
> favorable to the plaintiff, and accept all of [the] factual allegations as
> true." Id. (citation omitted).

Id. at 424.  In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the Supreme

Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires

that a complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Id. at 212.  Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what
> the plaintiff's claim is and the grounds upon which it rests." Conley v.
> Gibson, 355 U.S. 41, 47 (1957).  This simplified notice pleading
> standard relies on liberal discovery rules and summary judgment
> motions to define disputed facts and issues and to dispose of
> unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant
> County Narcotics Intelligence and Coordination Unit, 507 U.S. 163,
> 168-169 (1993).  "The provisions for discovery are so flexible and the
> provisions for pretrial procedure and summary judgment so effective,
> that attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court." 5 C. Wright &
> A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed.
> 1990).

Id. at 512-13.  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the

Supreme Court rejected the standard established in Conley v. Gibson, 355 U.S. 41,

45-46 (1957), that a claim should not be dismissed "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which

12

would entitle him to relief." The Supreme Court recently expounded upon

Twombly in Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937 (2009), writing:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).
>
> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining

13

> whether a complaint states a plausible claim for relief will, as the
> Court of Appeals observed, be a context–specific task that requires
> the reviewing court to draw on its judicial experience and common
> sense.  490 F.3d, at 157-158.  But where the well-pleaded facts do
> not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged–but it has not "show[n]"–"that
> the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 1949-50.

In sum, on the plausibility issue, the Sixth Circuit explains that the factual

allegations in the complaint need to be sufficient "to give notice to the defendant

as to what claims are alleged, and the plaintiff must plead 'sufficient factual

matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v.

Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 129

S. Ct. at 1949-50).  Further, "a legal conclusion [may not be] couched as a factual

allegation" and mere "recitations of the elements of a cause of action" are

insufficient to withstand a motion to dismiss. Id. (quoting Hensley Mfg. v. ProPride,

Inc., 579 F.3d 603, 609 (6th Cir. 2009)).


II.    Analysis of Dispositive Motions

       A.    Motion for Summary Judgment by Roy and Jimmie Rhodes, against
             Miller (Doc. #135)

In one of their Motions for Summary Judgment, Roy and Jimmie Rhodes

assert that Miller's claim should be dismissed, given that it arose out of a

"fraudulent transfer" between Miller and Paragon. Doc. #135.  Specifically, the

Rhodeses allege that "the transfer of part of the insurance claim from Paragon to Miller Industries was fraudulent." Id. at 2. In support thereof, they argue that the purported "transfer" violated Ohio Revised Code § 1336.04,[18] given that it took place with the "actual intent to hinder, delay, or defraud the Rhodeses,"[19] that

_____

[18]Ohio Revised Code § 1336.04 pertains to transfers or obligations that are fraudulent and provides, in pertinent part, as follows:

A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Ohio Rev. Code Ann. § 1336.04(A).

[19]In support of this contention, the Rhodeses point to James Miller's testimony, as follows:

A. . . . One thing you did ask, you asked why Miller [Industries] was a Johnny-come-lately to the insurance party. The reason we had not filed that originally is because we expected the insurance

15

Miller is an insider, that the "transfer" occurred after Paragon had been sued by the Rhodeses and that there was apparently no consideration for the transfer. Id. at 3-4.

Miller responds by stating that the transfer of real estate from Paragon to Miller occurred on May 11, 2004, thus pre-dating Paragon's relationship with the Rhodeses and negating the Rhodeses' argument that there was a fraudulent transfer. Doc. #143 at 1-2 (citing deed, at Ex. A). The Rhodeses respond by clarifying that they are accusing Paragon of "transferring fraudulently to Miller . . . the insurance claim, not the real estate." Doc. #152 at 1 (emphasis added).

The Court will make quick work of this Motion, as the Rhodeses point to no evidence in support of the basic premise of their allegation. In other words, there is no evidence to indicate that Paragon has "transferred" an insurance claim to Miller, let alone made a fraudulent transfer of the same. Rather, Miller has merely intervened in this litigation to assert a claim against the insurance proceeds on deposit with this Court, in the same fashion as the Rhodeses (and Sill and Chase)

---

company to be ethical and pay us as they should have paid us, and Vicki [Miller] could have reconciled the books when we received a settlement then, so that's why it never came. And then when the business failed, and parties came in for the proceeds, different parties, Chase Bank being one and Rhodeses being another, we had to protect our interests, so Miller Industries was brought to the forefront then.

Doc. #135 at 3-4 (citing Doc. #135-2 (James Miller Dep.) at 8) (emphasis in Doc. #135, but not in Deposition).

16

have done. Given that there is no genuine issue of material fact as to whether

Paragon fraudulently transferred an insurance claim to Miller, the Court

OVERRULES the Rhodeses' Motion for Summary Judgment, with regard to the

same (Doc. #135).


    B.    <u>Preliminary Findings on Remaining Dispositive Motions</u>

As was previously decided by this Court, except for that portion of the case

that is still pending between Paragon and AEIC (a bad faith claim brought by

Paragon against AEIC), the remainder of this case is proceeding "in the nature of

interpleader." Doc. #164 at 3. As explained by the Second Circuit,

> Historically, a bill of interpleader was an equitable device whose
> purpose was "the avoidance of the burden of unnecessary litigation or
> the risk of loss by the establishment of multiple liability when only a
> single obligation is owing." As "strict" interpleader evolved, it was
> available to a plaintiff when (1) the same debt or duty was demanded
> by all of the defendants, (2) all of the defendants' adverse titles or
> claims were derived from or dependent upon a common source, (3)
> the plaintiff was a neutral stakeholder, asserting no claim of its own
> to the fund or property against which the defendants made claims,
> and (4) the plaintiff had no independent liability to any of the
> defendants.
>
> As "equity extended its jurisdiction," the third of these requirements
> was relaxed, and a bill "in the nature of interpleader" became available
> in order to "guard against the risks of loss from the prosecution in
> independent suits of rival claims where the plaintiff himself claimed an
> interest in the property or fund which was subjected to the risk."
> Whether "strict" or merely "in the nature of," however, in each
> instance the goal of interpleader was to protect the plaintiff from "the
> risk of multiple suits when the liability was single."

<u>Bradley v. Kochenash</u>, 44 F.3d 166, 168-69 (2d Cir. 1995) (quoting <u>Texas v.</u>

Florida, 306 U.S. 398, 406-07, 412, 83 L. Ed. 817, 59 S. Ct. 563 (1939) and

citing 3A Moore's Federal Practice ¶ 22.03, at 22-12 to 22-13 (2d ed. 1994); 7 C.

Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1701, at 484-85

(1986)). Also, "[i]nterpleader may be invoked in the federal courts via Rule 22 or

via the Interpleader Act, 28 U.S.C. § 1335, . . . . but the [same] general principles

. . . apply to both rule and statutory interpleader."[20] United States v. High Tech.

Prods., 497 F.3d 637, 641 (6th Cir. 2007). In an interpleader action, the plaintiff

is the "stakeholder" that holds title to the fund in dispute and the defendants are

the adverse claimants to the fund. See id. As explained above, when an action is

"in the nature of interpleader," as is the present case, the stakeholder also claims

an interest in the stake. Bradley, 44 F.3d at 168-69.

Under 28 U.S.C. § 1335, a district court has jurisdiction over a civil action

that involves "adverse claims" to money or property worth $ 500 or more, if said

action involves at least two adverse claimants of diverse citizenship. The

---

[20]A stakeholder may bring an interpleader action in federal court by two
different, yet overlapping, means. "Statutory interpleader" is governed by 28
U.S.C. § 1335. Section 1335 pertains to situations where "[t]wo or more adverse
claimants, of diverse citizenship, . . . are claiming or may claim to be entitled to
such money or property, or to any one or more of the benefits arising by virtue of
any note, bond, certificate, policy or other instrument . . . ." 28 U.S.C. § 1335.
"Rule interpleader" is governed by Federal Rule of Civil Procedure 22, which
provides that "[p]ersons with claims that may expose a plaintiff to double or
multiple liability may be joined as defendants and required to interplead" and that
the remedy provided by rule interpleader "is in addition to--and does not supersede
or limit--the remedy provided by 28 U.S.C. §§ 1335, 1397, and 2361. . . . [and
that] [a]n action under those statutes must be conducted under these rules." Fed.
R. Civ. Proc. 22.

"adversity" requirement generally demands that inconsistent claims be asserted against the specific property that comprises the fund, rather than that the inconsistent claims arise "solely from the limited size of the fund." Ashton v. Paul, 918 F.2d 1065, 1070 (2d Cir. 1990). "The function of interpleader is to resolve claims for designated assets based on mutually exclusive theories rather than to adjudicate rival claims that are mutually exclusive only because of the limited size of the assets." Id. However, an interpleader action is governed by equitable principles. "Accordingly, in determining the manner in which interpleaded funds should be distributed, the district court sits as a court of equity, possessing the 'remedial flexibility' to 'do complete equity between the parties.'" Great Am. Ins. Co. v. Spraycraft, Inc., 844 F. Supp. 1188, 1191 (S.D. Ohio 1994) (quoting Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1261 (5th Cir. 1982) (which cites Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968); Brantley v. Skeens, 105 U.S. App. D.C. 246, 266 F.2d 447, 452 (D.C. Cir. 1959); 48 C.J.S. Interpleader § 52 at 226 (1981)).

This Court previously noted its understanding that priority of distribution in interpleader actions goes to those claimants who have a claim in the specific *res* held by the Court, rather than having general, unrelated claims against the stakeholder. Doc. #138 at 7 (citing United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985)). In accordance with same, the Court ordered the parties to "specify to what extent they have a claim in the specific *res* at issue or, if not,

19

what, if anything, entitles each of them to priority of payment over other claimants, together with citations of relevant authority." Id. at 8. The parties have now responded and the Court is prepared to determine the manner in which the interpleaded funds should be distributed. In so doing, the Court will review the merits of each pending dispositive Motion to determine to what extent the claims are generally valid and specifically asserted against the *res* at issue (the fire insurance proceeds) and whether any such claims have priority over others. The Court will then conclude with a determination of the most equitable way to distribute the interpleaded funds.

      1.    <u>Merits of Motion for Summary Judgment (and Motion for Distribution of Funds) by Miller, in Favor of Itself, Sill and Chase (Doc. #81, as amended by Docs. #83, #88) and Motion for Summary Judgment by Chase, in Favor of Itself (Doc. #171)</u>

            a.    <u>Motion for Summary Judgment (and Motion for Distribution of Funds) by Miller, in Favor of Itself, Sill and Chase (Doc. #81, as amended by Docs. #83, #88)</u>

The Court first turns to a consideration of Miller's Motion for Summary Judgment, wherein it claims that, as owner of the real estate that housed Paragon's business, it is entitled to $601,288, which is 92.5% (allowing Sill to have 7.5%) of $650,041, the amount being held that corresponds to the proceeds associated with the building, trees, shrubs and plants. Doc. #81, as amended by Docs. #83, #88. Miller also supports Chase's mortgage claim for $234,812, plus interest and attorney's fees. Doc. #88 at 2; Doc. #105 at 4-5. (Miller also joins

20

Paragon in moving for summary judgment in its favor, as to attorney's fees, which will be discussed *infra*.)

In support of its Motion, Miller points to the deed to the subject realty, which transfers the property from Paragon to Miller, "for valuable consideration paid", and which is dated May 11, 2004 (eight months prior to the fire and four months prior to the agreement entered into between Paragon and the Rhodeses). Doc. #105, Ex. A. Miller also argues that its claim is related to the *res* at issue, given that the $650,041 sum in question has been specifically deposited with the Clerk's Office for damage to the real property of which Miller is the owner. Doc. #149 at 3 (citing letter from Donald Drinko to Clerk of Courts, dtd. Jan. 6, 2010, filed at Doc. #149-2[21]).

The only potentially viable argument in opposition to this Motion is the Rhodeses' argument that Miller cannot be considered a creditor on the same level of priority as other creditors, given the "insider" characteristic of the transfer of real estate from Paragon to Miller.[22] Doc. #97 at 4-5. Other than the general

––––––––––––––––––––

[21]Miller does not authenticate this document, but no other party challenges its authenticity and its contents correspond with other allegations and evidence that is properly on the record. See e.g., Docket Entry, dtd. May 28, 2010 (regarding deposit of funds with Court).

[22]Both Chase and the Rhodeses also argue that Miller cannot file a Motion for Summary Judgment with regard to this claim, given that it had not filed a pleading in the litigation prior to filing the subject Motion. Doc. #97 at 3-4; Doc. #171 at 4. In the meantime, however, Miller filed a pleading asserting a claim against the insurance proceeds. Doc. #122.

Chase and the Rhodeses also argue that Miller's Motion should be denied,

21

allegation that the same persons own both Paragon and Miller, however, the Rhodeses provide no legal or factual support for this allegation. Thus, such argument carries no weight in the Court's analysis (particularly given that the deed's indication that the real estate transfer was made "for valuable consideration" is uncontroverted and that the real estate transfer pre-dates both the fire and the agreement between Paragon and the Rhodeses).

The Court finds Miller's claim against the $650,041 sum (the amount being held that corresponds to the proceeds associated with the building, trees, shrubs and plants) to be well taken and also recognizes it as a claim against the specific *res* at issue (possibly subject to the claims made by other interpleading parties, as discussed *infra*).  Miller owns the real estate that corresponds to this portion of the insurance proceeds and there is no indication on the record that Paragon's transfer of the realty to Miller was improper, especially given that the deed indicates that the real estate transfer was made "for valuable consideration" and the transfer predated the fire and the contract Paragon entered into with the Rhodeses.[23] Therefore, given that there is no genuine issue of material fact as to whether

---

because it would not leave enough money on Paragon's side of the ledger to pay all of Paragon's creditors, if it were sustained. Doc. #97 at 5-7; Doc. #171 at 4. The same could be said of these parties' claims, however, and does not provide a legal or equitable basis for determining the validity of Miller's claims against the subject insurance proceeds.

[23]Had the Rhodeses done proper due diligence at the time they entered into their business arrangement with Paragon, they would have known that Paragon did not own the real estate that housed its business.

Miller's claim against the $650,041 sum is valid or is against the *res* currently

being held by the Court, the Court SUSTAINS Miller's Motion for Summary

Judgment (Doc. #81, as amended by Docs. #83, #88), subject to a determination

of whether Miller is entitled to the full amount of the requested distribution from

the insurance proceeds after a consideration of the other parties' claims *infra*.


        b.    <u>Motion for Summary Judgment by Chase, in its Favor</u>
             <u>(Doc. #171)</u>

Incorporated in its response to Miller's Motion for Summary Judgment is

Chase's Motion for Summary Judgment, in its favor, as to its three claims. Doc.

#171.  As a reminder, Chase has asserted the following claims against the fire

insurance proceeds:  (1) $234,812, plus interest at 8.75%, attorney's fees and

other charges, pursuant to a promissory note/mortgage executed by Miller and

guaranteed by Paragon; (2) $205,333, plus interest at prime + 3%, attorney's

fees and other charges, pursuant to a non-mortgage promissory note executed by

Paragon; and (3) $89,528, plus interest at 10.24%, attorney's fees and other

charges, pursuant to a non-mortgage promissory note executed by non-party

Captiva and guaranteed by Paragon. Doc. #91 (Chase Counter/Cross Claims).  As

to its claimed attorney fees, Chase states that its total attorney fees and costs, as

of February 22, 2010, were $8,515.[24] Doc. #171 at 3; Doc. #171-1 (Beyer Aff.)

_____

[24]Chase also claims that it is entitled to future attorney fees, but provides no
indication of the same.  Thus, the Court is not able to consider the same when

23

¶ 5. It does not break down this amount between the three claims, however.

When responding to the Court's request for additional briefings pertaining to whether the various claims are against the *res* at issue, Chase concedes that its two non-mortgage claims are not. Doc. #151 at 3. It asserts, however, that its claim relative to the mortgage is a claim directly against the *res*, given that the mortgage at issue was on the property that is the subject of the fire insurance proceeds. Id. at 2-3. In support thereof, Chase points out that, pursuant to the mortgage, the policy in question lists it as a loss payee. Doc. #2-1 (ins. policy) at 10; Doc. #86-1 (Ehmke Aff.) ¶ 6. Further, Chase asserts that courts have enforced mortgage-holder clauses in insurance contracts, finding that lenders are entitled to related insurance proceeds. See Hussain v. Boston Old Colony Ins. Co., 311 F.3d 623, 642 (5th Cir. 2002) ("The law is clear that even under an open or simple loss payable provision . . . the mortgagee has a direct claim to the insurance proceeds up to the amount necessary to cover the outstanding balance on the obligation secured by that mortgage.").

The only party that responds to Chase's Motion is Miller (also as part of the responsive memoranda to Miller's Motion for Summary Judgment). Doc. #105. As previously noted, Miller is supportive of Chase's claim related to the mortgage, although it does not weigh in on any of Chase's other claims. Id. at 4-5.

Given that all three of Chase's claims arise as a result of valid judgments

---

ruling herein.

24

against Paragon, the Court finds the same to be proper claims in the present interpleader action.  The only claim that is directly against the *res*, though, is the mortgage claim (for $234,812, plus interest at 8.75%, attorney's fees and other charges), for the reasons articulated by Chase above.

As previously noted, Chase has not broken down its stated attorney fees and costs between its three claims.  For purposes of the equitable distribution to be made forthwith, the Court proportions the same ($8,515) between the three claims, to wit:   $3,772 (or 44.3%) for the $234,812 claim; $3,304 (or 38.8%) for the $205,333 claim; and $1,439 (or 16.9%) for the $89,528 claim.

As to the claimed interest payments, the state courts entered judgment on all three claims on January 14, 2010. Doc. #171-1 (Beyer Aff.) ¶¶ 3-4.  With regard to the interest that is payable, the Judgment Entries read as follows:

- Claim for $234,812 - interest at 8.75% ($53.91 per day), from January 11, 2010

- Claim for $205,333 - interest at prime +3% ($34.16 per day), from January 11, 2010

- Claim for $89,528 - interest at 10.24% interest ($24.51 per day), from January 11,2010

Doc. #171-2 (Montgomery County J. Entry) ¶ 5; Doc. #171-3 (Miami County J. Entry) ¶5. As of September 22, 2010, the Court computes the interest for the three claims as follows:

- Claim for $234,812:  255 days x $53.91 = $13,747

- Claim for $205,333:  255 days x $34.16 per day = $8,711

25

- Claim for $89,528:  255 days x $24.51 per day = $6,250

Given that there is no genuine issue of material fact as to whether Chase's

claims on its three outstanding notes (for principal amounts of $234,812,

$205,333, and $89,528, plus interest, attorney's fees and costs) are valid and as

to whether its claim related to the mortgage (for principal amount of $234,812) is

against the *res* currently being held by the Court, the Court SUSTAINS Chase's

Motion for Summary Judgment (Doc. #171), subject to a determination of whether

it is entitled to the full amount of the requested distribution (for principal amounts,

interest, attorney's fees and costs) from the insurance proceeds after a

consideration of the other parties' claims *infra*.


    2.    <u>Merits of Motion for Summary Judgment by Roy and Jimmie
Rhodes, in Favor of Themselves (Doc. #82), and Motion to
Dismiss Claims of Roy and Jimmie Rhodes, by Paragon (Doc.
#93)</u>

        a.    <u>Roy Rhodes's Claim for 35% of the Roy Rhodes
Championship Calls Business</u>

As previously noted, on September 25, 2004 (four months prior to the fire),

Paragon purchased a business known as "Roy Rhodes Championship Calls".

Pursuant to the purchase agreement, Roy Rhodes maintained an interest in "35%

of the value of the Roy Rhodes Championship Calls division" of Paragon.  Rhodes

alleges that the Roy Rhodes Championship Calls Division of Paragon constituted

98%[25] of the non-realty assets that were destroyed or damaged by the fire and, thus, he is entitled to 35% of the corresponding portion of the insurance proceeds. He moves for summary judgment as to the same, while Paragon moves to dismiss this claim. Doc. #82; Doc. #93.  The non-realty insurance proceeds are valued at $684,772.[26]  Thus, with this claim Roy Rhodes is claiming entitlement to 35% of 98% of $684,772, or $234,877.  Roy Rhodes also contends that this claim is directly against the *res* held by this Court.  In support thereof, Rhodes argues that he is entitled to a portion of the property that was destroyed, pursuant to the language of the contract with Paragon, and, thus, has an interest directly against the *res* being held by the Court. Doc. #145 at 2.

In response, Paragon concedes that assets of the Roy Rhodes Championship Calls Division of Paragon constituted 98% of the non-realty assets that were destroyed or damaged by the fire. Doc. #102 at 7.  However, it argues that "[a] summary judgment was rendered against Roy Rhodes regarding this issue" in a state court proceeding between these two parties.[27] Doc. #89 at 2; Doc. #102 at

---

[25]Rhodes cites his own affidavit in support of the 98% figure. Doc. #82-1 (Roy Rhodes Aff). ¶ 3.  It is unclear how Rhodes came by this information, but Paragon, in effect, concedes that it is accurate (Doc. #102 at 7), so the Court will rely on the same herein.

[26]The total of the insurance proceeds deposited with the Court is $1,334,813.  The portion of this sum corresponding to the real estate assets is $650,041.  The difference between those numbers is $684,772.

[27]Without further explanation, Paragon also states that "Roy Rhodes'[s] claim for insurance proceeds must fail because he was not a named insured under

27

8-9.  Rhodes, on the other hand, argues that this claim was not the subject of the related stated court proceeding. Doc. #114.

After review of the pertinent state court documents (see Doc. #130-1 at 5-12 (State Court Dec. on Paragon's Summ. J. Mot.)), the Court concludes that the issue of whether Roy Rhodes had an interest in "35% of 98% of the non-real-estate insurance proceeds" was neither put before nor decided upon by the state court.  As noted above, as a part of the purchase agreement for Roy Rhodes Championship Calls, Roy Rhodes maintained an interest in "35% of the value of the Roy Rhodes Championship Calls division" of Paragon. Doc. #42-1 (Contract) ¶ 6(c) (emphasis added).  As part of the business purchase arrangement, the parties also executed both a promissory note (wherein Paragon agreed to pay Roy Rhodes $200,000) and an employment agreement (wherein Paragon agreed to employ Roy Rhodes). Id.; Doc. #130-1 at 5-6.  In the state court litigation, Roy Rhodes sued Paragon and its owners, Vicki and James Miller, claiming "breach of the employment contract, unpaid salary, breach of fiduciary duty, wrongful discharge, conversion, and claims relative to [the] promissory note." Doc. #130-1 at 6.  Thus, Roy Rhodes did not specifically assert a claim relative to the alleged 35% interest in the value of Roy Rhodes Championship Calls.

---

the policy." Doc. #102 at 5.  This argument makes no sense, given that the only party who was named as an insured, for purposes of the fire insurance policy, is Paragon.  Further, this portion of the case is not about a dispute with AEIC over payment of insurance proceeds, but rather is about the equitable distribution of the already distributed funds between the interpleading parties.

The state court did tangentially refer to the same, however, in its decision on a motion for summary judgment. In addressing the breach of fiduciary duty claim, the state court concluded that Roy Rhodes's retained interest was in the nature of "partial, additional consideration for the 'purchase price'," rather than being in the nature of an ownership interest in Paragon. Id. at 9-10. Thus, the court concluded that Paragon owed no fiduciary duty to Roy Rhodes, since he did not hold an ownership interest in the company. Id. at 10. In arriving at this conclusion, however, the Court did recognize that Rhodes had a valid claim for a 35% interest in the profits or assets of the Roy Rhodes Championship Calls Division of Paragon. Id. Therefore, Paragon's assertion that a summary judgment was rendered against Roy Rhodes regarding this issue in the state court proceeding is incorrect. To the extent the state court did address the issue, its recognition that Rhodes had a valid interest in 35% of the assets of the Roy Rhodes Championship Calls Division of Paragon weighs in favor of Rhodes, in the present litigation.

Thus, this Court concludes that Roy Rhodes's claim for $234,877, with regard to his claim for 35% of 98% of the value of the insurance proceeds that are attributable to the non-realty property, as owner of a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon, is well taken. Further, such claim is against the specific *res* at issue (possibly subject to the claims made by other interpleading parties, as discussed *infra*), given that the stated insurance proceeds were paid as a result of the damage to the property in question (assets of the Roy

Rhodes Championship Calls Division of Paragon).

      b.    <u>Roy Rhodes's State Court Judgment for $258,125, for</u>
<u>Breach of Employment Contract Claim</u>

     Roy Rhodes also claims an interest in $258,125, as a judgment creditor of Paragon, pursuant to a state court judgment in his favor on a breach of employment contract claim. Rhodes moves for summary judgment, asserting that as a judgment creditor, he has a right to compel payment of this claim, in the present proceeding.[28] Doc. #82 at 2-3. Paragon does not argue that it is not indebted to Rhodes for the sum, but contends that the claim is not against the *res* in this case, given that the judgment was for breach of an employment contract claim, which is not related to the fire insurance proceeds at issue in this litigation. Doc. #160 at 2. Rhodes concedes that his claim is not against the *res* held by the Court. Doc. #145 at 2.

     The Court concludes that Roy Rhodes has a valid claim for $258,125 against Paragon. However, such claim is not against the *res* at issue in the present case, given that the judgment was rendered for an unrelated breach of employment contract claim.

---

[28]Rhodes asserts that Paragon has not moved for a stay of execution of this judgment and Paragon does not contradict such assertion. Doc. #132; <u>see also</u> Doc. #160.

c.  Jimmie Rhodes's Claim for $50,000 Plus 6% Interest

Jimmie Rhodes asserts a claim for $50,000 plus 6% interest (payable beginning October 8, 2009), as a general creditor of Paragon, pursuant to the terms of an agreement previously entered into between the parties. Rhodes concedes that his claim is not against the *res* held by the Court. Doc. #145 at 2.

In support of his claim, Rhodes explains that the promissory note in question, which is dated October 8, 2004, reads in pertinent part as follows:

> For value received, Paragon Molding Ltd. [w]ill pay to Jimm[ie] Rhodes: The total of $50,0000.00 payable five years from the date of this document on October 8, 2009. Annual interest of 6% of unpaid balance is due annually on the anniversary date of this document.

Doc. #82-3 (J. Rhodes Aff.) ¶ 2; Doc. #82-4 (Prom. Note). Rhodes states that the subject promissory note was at issue in the previous state court proceeding, but that the claim that was heard at that trial (which occurred in February 2009) was a claim for the four annual interest payments that Paragon had failed to make each October between 2005 and 2008. Doc. #82-3 (J. Rhodes Aff.) ¶¶ 4-5. at 6. In support thereof, Rhodes attaches the state court's Judgment Entry on Jury Verdict, which states that the jury returned a verdict for Jimmie Rhodes "on his claim for interest payments on a promissory note" in the sum of $13,322. Id.; Doc. #82-5 (Mont. Cty. J. Entry, dtd. Mar. 3, 2009). In his memorandum in support of his Motion for Summary Judgment, Rhodes also argues that "[t]he lack of an acceleration clause prevented him from presenting a claim for $50,000 as part of

31

the state-court trial, since the October 8, 2009 due-date for the $50,000 payment had not arrived yet, leaving that claim unripe." Doc. #82 at 6.

In response, Paragon argues that this claim was the subject of the afore-mentioned state court proceeding, and thus should be barred from consideration by this Court.

> The final matter that went to trial was the matter of the interest on a certain note for $50,000.00 claimed by Jimmie Rhodes. A verdict was returned in favor of Jimmie Rhodes and against Paragon for interest on said alleged note until the date of trial. ALL OF THIS INTEREST HAS BEEN PAID BY PARAGON TO JIMMIE RHODES.
>
> However, to this very date, no judgment has been rendered on the principal amount of the note. Jimmie Rhodes sought "… a declaratory judgment that Paragon is liable on the note and that no acts, omissions, or facts that have occurred to date relieve Paragon of that liability." This request for a declaratory judgment has not been ruled on.

Doc. #102 at 4 (citing Doc. #102-5 (Miller Aff.) ¶¶ 7-10 and quoting Doc. #102-2 (State Court Compl.) ¶ 28) (emphasis in original). Thus, concludes Paragon, "[s]aid matter should be left in the state court and this Honorable Court should not pre-empt the Montgomery County Common Pleas Court's jurisdiction in this matter." Id. at 7.

There are three documents that are important to the resolution of this issue that have not been fully highlighted by either party, to wit: (1) Jimmie Rhodes's state court Amended Complaint (Doc. #102-2 (Mont. Cty. Am. Compl.) ¶¶ 22-28); (2) the state court's Decision overruling, in pertinent part, Paragon's Motion for Summary Judgment on Jimmie Rhodes's claims (Doc. #152-2 at 31, 34); and (3)

Paragon's appeal of the state court Decision on the Motion for Summary Judgment (Doc. #152-2 at 23-25). A review of the state court Amended Complaint indicates that Jimmie Rhodes brought two claims against Paragon, one for payment of the past-due interest payments and one for a declaratory judgment that Paragon was liable for the principal amount of the note and future interest payments. Doc. #102-2 (Mont. Cty. Am. Compl.) ¶¶ 22-28. In its state court Motion for Summary Judgment, Paragon asked the Court to determine that Jimmie Rhodes was not entitled to recover under the promissory note (presumably for both claims), arguing that he had not provided consideration for the same. Doc. #152-2 at 31. The state court found Paragon's argument unavailing, however, and instead determined that Jimmie Rhodes did provide consideration for the note and, thus, the agreement was valid and binding. See id. at 34. Finally, as noted previously in this Opinion, the only decision in the state court proceeding that Paragon appealed was the afore-mentioned Summary Judgment decision, in favor of Jimmie Rhodes. Id. at 23-25. (Subsequent to the Summary Judgment Decision and prior to the appeal was the jury trial, wherein the jury awarded Jimmie Rhodes $13,323 for the past-due interest payments. Doc. #82-5.)

In sum, then, Rhodes brought claims for past-due interest payments and for a declaratory judgment concerning Paragon's liability for the principal amount of the note and any future interest payments. In its Summary Judgment Decision, the state court, in essence, issued the requested declaratory judgment, finding that

Paragon was liable to Jimmie Rhodes under the note. The Court then put the question of past-due interest payments to the jury, which ruled in favor of Rhodes. Paragon subsequently appealed the Court's ruling pertaining to its base liability under the note. Therefore, Paragon's argument that this issue was left unresolved by the state court is unavailing. The matter was resolved in favor of Rhodes by the state trial court and has now been appealed.

The only question for this Court to resolve, then, is whether the pendency of the appeal destroys the collateral estoppel effect of the lower court's decision. As to this question, the Court notes that, in Ohio, "[i]t is well settled that the pendency of an appeal does not prevent the judgment's effect as *res judicata* in a subsequent action." New York Life Ins. Co. v. Tomchik, 1999 Ohio App. LEXIS 1078, *7 (Ohio 7th App. Dist. Mar. 17, 1999) (citing Cully v. Lutheran Medical Center, 37 Ohio App. 3d 64, 65, 523 N.E.2d 531 (Ohio 8th App. Dist. 1987)). "If the judgment is reversed on appeal, appellant's remedy is by motion for relief from judgment pursuant to [Civil Rule] 60(B)(4)." Id. at **7-8. Therefore, the pendency of the appeal in the state court proceeding has no effect on this Court's recognition of the viability of Jimmie Rhodes's claim for $50,000 plus 6% interest, payable beginning October 8, 2009, as recognized by the state trial court.

This Court concludes, therefore, that Jimmie Rhodes has a valid claim for $50,000 plus 6% interest, payable beginning October 8, 2009, against Paragon. However, such claim is not against the *res* at issue in the present case, given that

34

the claim is relative to a promissory note that is unrelated to the fire insurance proceeds at issue in the present litigation.

As to the computation of interest, Rhodes proposes that the 6% figure provided for in the note properly computes to $8.22 per day.[29] Doc. #82 at 6-7. Given that no party objects to the same and the Court finds it to be reasonable, the amount of interest due on the note, as of September 22, 2010, is $2,869.[30]

> d. <u>Summary of Findings Related to Motion for Summary Judgment by Roy and Jimmie Rhodes, in Favor of Themselves (Doc. #82) and Motion to Dismiss Claims of Roy and Jimmie Rhodes, by Paragon (Doc. #93)</u>

In sum, the Court concludes that Roy and Jimmie Rhodes have plead sufficient factual allegations to give notice to Paragon as to a plausible claim relative to Roy Rhodes's claim for $234,877 (with regard to his claim for 35% of 98% of the value of the insurance proceeds that are attributable to the non-realty property as owner of a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon) and, thus, Paragon's Motion to Dismiss this claim (Doc. #93) is OVERRULED.

Further, the Court SUSTAINS the Motion for Summary Judgment by Roy and

---

[29]Rhodes computes the daily rate as follows: 6% of $50,000 = $3,000; $3,000 ÷ 365 = $8.22. Doc. #82 at 6-7.

[30]Computed as follows: (91 (number of days in 2009) + 265 (number of days in 2010)) x $8.22 = $2,869.

Jimmie Rhodes (Doc. #82), given that there is no genuine issue of material fact as to the following:  (1) that Roy Rhodes has a valid claim for $234,877 against Paragon (with regard to his claim for 35% of 98% of the value of the insurance proceeds that are attributable to the non-realty property as owner of a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon), which is against the *res* currently being held by the Court; (2) that Roy Rhodes has a valid claim for $258,125 against Paragon (as a result of a state court judgment for a breach of employment contract), which is not against the *res* at issue in the present case; and (3) that Jimmie Rhodes has a valid claim for $50,000 plus $2,869 in interest (pursuant to an agreement entered into between the parties) against Paragon, which is not against the *res* at issue in the present case.  Said findings are subject to a determination of whether the Rhodeses are entitled to the full amount of the requested distributions from the insurance proceeds after a consideration of the other parties' claims *infra*.

   3.   Merits of Motion for Summary Judgment by Sill, in Favor of
        Itself (Doc. #95)

   The Court next considers Sill's Motion for Summary Judgment, in favor of itself. Doc. #95.  As noted above, as a result of the fire that was the genesis of the present controversy, Sill entered into a Loss Consultants and Appraisers Agreement with Paragon, wherein Sill agreed to assist in the preparation of the fire insurance claim and Paragon assigned and conveyed to Sill 7.5% of the total

proceeds related to that claim. Doc. #47 (Sill Mot. Intervene); Doc. #51 (Sill Am. Counter/Cross Claims); Doc. #51-1 (Agreement between Sill & Paragon); Doc. #148 (Sill Am. to Counter/Cross Claims). As a result of Paragon's earlier receipt of fire insurance proceeds in the amount of $793,405 (which sum is not a subject of the present dispute), Paragon paid Sill $60,949, in accordance with a settlement agreement reached by those parties. Doc. #51; Doc. #95-1 (Werner Aff.) ¶ 5; Doc. #148; Doc. #150. As a result of Paragon's receipt of additional life insurance proceeds (currently being held by this Court and the subject of the present dispute), Sill now claims that it is entitled to an additional 7.5%, in accordance with the terms of both the original and settlement agreements. Docs. #51, #148, #150.

In its Motion for Summary Judgment, Sill asserts that its claim is against the specific *res* at issue in this litigation, given that it is based on Paragon's express written assignment and conveyance of a stated portion of the subject insurance proceeds, and also asserts that it is entitled to priority over all other claimants, under the theory that its efforts "in timely presenting the insurance claims and documenting them made it possible for there to be a fund at all" and that it, thereby, conferred a "substantial benefit" upon all parties. Doc. #95 at 4; see also Docs. #133, #150.

In support of its assertion regarding the "substantial benefit" theory, Sill points to two Bankruptcy Court cases, which recognize the superiority of a claim

asserted by a party who exerted time and resources to confer a substantial benefit

on a third party or parties. Doc. #95 at 5-7 (citing In re REDA, Inc. 54 B.R. 871,

882 n.24 (Bankr. N.D. Ill. 1985); In Re Alston, 322 B.R. 265, 270-72 (Bankr. N.J.

2005)). One of the cases relied upon by Sill explains the "substantial benefit

doctrine" as follows:

> Under [the substantial benefit] doctrine, a party that renders a
> substantial service to another party is entitled to reasonable fees as
> reimbursement. Mills v. Electric Auto-Lite, 396 U.S. 375, 393-94, 24
> L. Ed. 2d 593, 90 S. Ct. 616 (1970);[31] Hamer v. Kirk, 64 Ill.2d 434,

---

[31]Mills v. Electric Auto-Lite Co. involved the dissemination of misleading
proxy solicitations, where certain shareholders had borne the expense of the
lawsuit and which the Court recognized was an expense incurred for the benefit of
the corporation and the other shareholders. Mills, 396 U.S. 375, 90 S. Ct. 616, 24
L. Ed. 2d 593 (1970). In determining whether the petitioners were entitled to
recover their attorneys' fees, the Court noted that, generally, the same are not
recoverable as costs. Id. at 391-92. However, it noted that both the courts and
Congress have developed exceptions to this rule "for situations in which overriding
considerations indicate the need for such a recovery." Id. at 391-92. The Court
further recognized that a judge-created exception to the rule occurs when "a
plaintiff has successfully maintained a suit, usually on behalf of a class, that
benefits a group of others in the same manner as himself," for to allow the others
to obtain benefit from the plaintiff's efforts without contributing to the litigation
expenses "would be to enrich the others unjustly at the plaintiff's expense." Id. at
392. Further,

> "Where an action by a stockholder results in a substantial benefit to a
> corporation he should recover his costs and expenses. . . . [A]
> substantial benefit must be something more than technical in its
> consequence and be one that accomplishes a result which corrects or
> prevents an abuse which would be prejudicial to the rights and
> interests of the corporation or affect the enjoyment or protection of an
> essential right to the stockholder's interest."

Id. at 396 (quoting Bosch v. Meeker Cooperative Light & Power Assc., 101
N.W.2d 423, 426 (Minn. 1960)). The Court ultimately determined that "[t]o award

> 437, 442, 356 N.E.2d 524, 525-26, 528, 1 Ill. Dec. 336 (1976).
> The doctrine most frequently rewards the efforts of attorneys;
> however, the same equitable grounds that protect attorneys who
> confer such benefits ought to protect an insurance adjuster who does
> likewise. The insurance adjuster, like the attorney, expends time and
> resources to confer a substantial benefit on a third party from whom it
> seeks only to recover reasonable fees. Union Indemnity would not
> have issued the check for the fire loss if the debtor's claim under the
> insurance policy had not been properly prepared and submitted in a
> timely fashion. The Bank would have been forced to hire its own
> adjuster if none had been employed. Lazarus-Willis deserves
> compensation for its work. In the instant case, the efforts of
> Lazarus-Willis created the insurance proceeds and the Bank, as the
> secured party entitled to those funds, reaped a quantifiable benefit.

In re Reda, Inc., 54 B.R. 871 at 882 n.24. Similarly, the other case relied on by

Sill concluded that, to permit a secured creditor "to reap the benefits of [an]

insurance settlement without assuring full payment to the insurance adjusters

whose efforts lead to that settlement would be inequitable." In re Alston, 322 B.R.

at 271.

Paragon does not dispute the claim filed by Sill. The Rhodeses and Chase do

challenge the same, however. The Rhodeses and Chase do not dispute whether

Sill has a valid claim against the res held by the Court; rather, they contend that

Sill's claim should not be given priority status over the other parties' claims.

Although they present several arguments in support of their position, the Court

finds one such compelling and, thus, does not find it necessary to address the

---

attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a
cause of action is not to saddle the unsuccessful party with the expenses but to
impose them on the class that has benefitted from them and that would have had
to pay them had it brought the suit." Id. at 396-97.

others.[32]

The Rhodeses and Chase agree that courts have recognized a doctrine whereby a service provider may have a priority claim for fees, if the provider exerted time and resources to confer a substantial benefit on a third party or parties. Docs. #116, #119.  They go on to correctly assert, however, that courts that have recognized this doctrine have generally required the service provider to offer proof as to the reasonableness of its fees in relation to the services provided, prior to recognizing the priority status of such a claim.  For example, in a recent unpublished decision, an Ohio District Court applied a six-factor test that was earlier recognized by the Sixth Circuit, in determining whether attorney's fees charged to a common fund were reasonable.  That test considers the following, in the reasonableness calculus:

---

[32]The Rhodeses also offer the following arguments in opposition to Sill's Motion for Summary Judgment:  (1) Sill's services did not give rise to the funds in question, as it is "undisputed" that the insurance award was made pursuant to an appraisal process in which Sill played no part; (2) Sill must show that the payout would have been lower without its work in order for it to be entitled to priority and, even then, its priority claim would apply only to the difference, not to the fund as a whole; and (3) Under Ohio law, insurance adjusters cannot claim fees for services unless they are certified to do so and no such proof has been submitted by Sill. Doc. #116.

Chase adopts the arguments made by the Rhodeses. Doc. #119 at 1.  It also argues that to be entitled to priority, Sill must show that it "created or increased the fund", but it did not; rather, Finnicum (the appraisal firm) did and has presumably been paid. Id. at 2-3.  Chase also attempts to argue that since Sill's contract was only with Paragon, Sill has no right to Miller's portion of the money for the building loss. Id. at 2.  This argument is not valid, however, in that Sill (like Miller) has made a claim against the interpleaded fund held by Paragon, rather than against Miller.

(1)     [T]he value of the benefit rendered to the plaintiff class;

(2)     the value of the services on an hourly basis;

(3)     whether the services were undertaken on a contingent fee basis;

(4)     society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

(5)     the complexity of the litigation; and

(6)     the professional skill and standing of counsel involved on both sides.

Donaway v. Rohm & Haas Co., 2009 U.S. Dist. LEXIS 56574, **24-27 (W.D. Ky. July 1, 2009) (citing In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 533 (E.D. Mich. 2003); Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996); Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir. 1983)); see also In re Cardinal Health Inc. Sec. Litigs., 528 F. Supp. 2d 752, 765-66 (S.D. Ohio 2007) ("Rewarding attorneys in securities class actions is important because absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation.  Reasonable fee awards in such cases encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance.") (internal quotations and citations omitted).

In response, Sill states that its fee was reduced pursuant to the previously mentioned settlement agreement that it entered into with Paragon. Doc. #133 at 3. Sill also points to the affidavit of James Gerrity, the appraiser from Finnicum

41

Adjusting Company who participated in the appraisal process, stating that Gerrity reviewed Sill's "extensive work product", which included "detailed building damage appraisals and contents damage appraisals", and that the same "was essential to the resolution of the dispute through appraisal." Doc. #133-1 ¶¶ 3-4, 7.

Although the Court recognizes both that Paragon (but not the other interpleading parties) ultimately agreed that the requested sum was proper and that Sill's services were undoubtedly invaluable to the appraisal process, it concludes that Sill has not set forth sufficient proof to demonstrate that its claim for 7.5% of the additional life insurance proceeds is "reasonable", given the types of factors recognized by other courts in similar situations, as noted in the test outlined above. The Court would have found particularly helpful some indication from Sill as to the value of the services it provided on an hourly basis and how many hours it invested in providing the services. See Donaway, 2009 U.S. Dist. LEXIS 56574, *26 (in finding requested attorney's fees were not reasonable, relying in part on fact that "it is unclear exactly how much work counsel performed to build and prosecute this case. By their choice, counsel has not submitted any hourly compilations of their time. Therefore, the Court has no way of knowing the amount of time and effort actually devoted to these cases or any related cases."). Absent any such evidence, the Court cannot find that Sill has set forth sufficient proof to indicate that its claim for services is reasonable.

Such conclusion means only that Sill's claim is not provided priority status

over the claims of the other interpleading parties.  It does not, however, mean that

Sill's claim is not recognized as a valid claim against the interpleaded sum.  On the

contrary, based on the agreement entered into between Paragon and Sill for the

services in question, Sill has a valid claim for 7.5% of the interpleaded fund,

against Paragon.  Further, the Court finds that such claim is against the *res* at issue

in the present case, given that Sill rendered the services in question in order to

secure the *res* for Paragon.

Therefore, given that there is no genuine issue of material fact on these

points, the Court SUSTAINS Sill's Motion for Summary Judgment (Doc. #95), as to

whether its claim for 7.5% of the interpleaded fund is valid and is against the *res*

currently being held by the Court, but OVERRULES the same, as to whether Sill's

claim is entitled to priority status.  These findings are subject to a determination of

whether Sill is entitled to the full amount of the requested distribution from the

insurance proceeds after a consideration of the other parties' claims *infra*.


4.  Merits of Motion for Summary Judgment by Paragon and Miller,
in their Favor (Attorney's Fees) (Doc. #100)

Pursuant to an agreement that the two companies entered into with their

attorney, Don Little, Paragon and Miller claim an interest in 15% of the

interpleaded funds for payment of attorney's fees. Doc. #100-1.[33]  According to

---

[33]The copy of this agreement that is on the record has not been
authenticated. See Doc. #100-1.  Since no party disputes its authenticity,

that agreement, Paragon and Miller originally agreed to pay Little 10% of the fire insurance proceeds for representing them in their claim against AEIC. Id. When the Rhodeses intervened in the present suit, however, Paragon/Miller agreed to increase the payment to Little to 15%, to cover the additional costs incurred as a result thereof. Id.

The final dispositive Motion before the Court, with regard to the interpleaded funds, is the Motion by Paragon/Miller for Summary Judgment in their favor, as to the 15% payment of their attorney's fees. Doc. #100. In their Motion, Paragon/Miller argue not only that they have a valid claim for 15% of the proceeds, but that the same should have priority over other claims, given that Little's efforts provided a "substantial benefit" to all interpleading parties in this litigation. Id. In so doing, they specifically rely on the "same cases cited in the recent motion of the Alex N. Sill Company for summary judgment." Id. at 2. As to whether their claim is against the *res* held by the Court, Paragon/Miller contend that it is the work of their attorney that created the insurance proceeds at issue in this litigation. Doc. #149 at 3.

Although they do not object to the payment of the claim in general, both the Rhodeses and Chase oppose giving the claim priority status for several reasons. First, they argue that the 5% portion of the fee that was for Little's work in defending Paragon's/Miller's interest in the insurance proceeds from other

_____

however, the Court will rely on it when ruling herein.

interpleading parties was not for the "substantial benefit" of all of the claimants to the fund. Docs. #117, #118. As to the additional 10% fee, they raise essentially the same arguments they raised in opposing Sill's priority claim, as discussed above, to include arguing that Paragon/Miller have not demonstrated that the fee is reasonable.

In response to the challenge regarding the 5% portion of the fee that was allocated for Little's work in defending against the claims of other interpleading parties, Paragon/Miller concede that the sum was used to protect the fund against the Rhodeses' claims, but rather confusingly argue that "[p]rotecting the fund is inherent in creating the fund" and, thus, the Court should not deny the request for attorney fees. Doc. #126 at 1-2. In response to the challenge regarding the reasonableness of the claimed attorney fees, Paragon/Miller point to the affidavit of Attorney Little who states that the 15% fee is substantially less than other contingent fee cases, which generally range from 25%-33.33%.[34] Doc. #124 (Little Aff.) at 7-8. They also point to Little's affidavit, which states that he believes that "15% is a more than reasonable fee and, in fact, is very reasonable." Id. at 8. The Court also notes that Little indicates that he did not keep hourly time records, because the fee agreed upon was a contingent fee and not a fee by an

---

[34]In support of their reasonableness argument, Paragon/Miller have also attached what they refer to as "the appraisal provision of the insurance policy," but what is actually entitled "Commercial Inland Marine Conditions". Doc. #126 at 6 (citing Ex. A). It is not clear how this page of the policy supports the argument at hand, however, so the Court has disregarded it in ruling herein.

hourly agreement. Id.

The Court finds the argument regarding the 5% interest to be compelling, given that Little's work in defending Paragon's/Miller's interest in the life insurance proceeds against the claims of the various interpleading parties "substantially benefitted" only Paragon and Miller, but not all of the interpleading parties in this litigation. As to the remaining 10% of the fee, the Court finds that neither Paragon nor Miller has set forth sufficient evidence to indicate that the fee is "reasonable".

As noted above in the discussion pertaining to Sill's claimed priority interest in its fees, other courts have recognized a doctrine whereby a service provider may have a priority claim for fees, if the provider exerted time and resources to confer a substantial benefit on a third party or parties. Courts that have recognized this doctrine, however, have generally required the service provider to offer proof as to the reasonableness of its fees in relation to the services provided, prior to recognizing the priority status of such a claim. E.g., Donaway v. Rohm & Haas Co., 2009 U.S. Dist. LEXIS 56574, **24-27 (W.D. Ky. July 1, 2009) (citing In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 533 (E.D. Mich. 2003); Bowling v. Pfizer, Inc., 102 F.3d 777, 780 (6th Cir. 1996); Smillie v. Park Chem. Co., 710 F.2d 271, 275 (6th Cir. 1983)). The evidence pointed to by Paragon/Miller, in support of their reasonableness argument (Little's own affidavit stating that contingent fee cases are generally between 25%-33% and also attesting to the fact that his own fee was "very reasonable"), is insufficient to demonstrate

46

reasonableness, in that the Court has no way to know whether a case such as the present one (pursuing a fire insurance claim) is sufficiently similar to generic contingent fee cases and, also, because Little's attestation that his own fee is "very reasonable" is self-serving.

That being said, just as with Sill's claim, the Court's finding that Paragon/Miller have not pointed to sufficient evidence to support their assertion that Little's claim is "reasonable" only means that their claim for attorney fees is not afforded priority status. Their claim is valid, however, and is asserted against the *res* in question, given that the 10% fee is for Little's services that were rendered in conjunction with his representation of Paragon in the litigation against AEIC for procurement of the fund in question and the 5% fee is for Little's services in defending/asserting Paragon's/Miller's interest in the fund.

Therefore, given that there is no genuine issue of material fact on these points, the Court SUSTAINS Paragon's and Miller's Motion for Summary Judgment (Doc. #100), as to whether their claim for 15% of the interpleaded fun is valid and is against the *res* currently being held by the Court, but OVERRULES the same, as to whether their claim is entitled to priority status. This conclusion is subject to a determination of whether Paragon and Miller are entitled to the full amount of the requested distribution from the insurance proceeds after a consideration of the other parties' claims herein.

47

C.    Conclusory Findings on Remaining Dispositive Motions

At present, the interpleaded fund is comprised of $1,334,813, although AEIC may add additional funds, pursuant to the forthcoming resolution of the outstanding coverage dispute between Paragon and AEIC, regarding electronic data, processing/storage and outdoor property coverage relative to the loss of trees and shrubs.  In determining how to most equitably distribute the interpleaded fund, the Court will begin with a summary of its preliminary findings on the remaining interpleader dispositive motions.

To begin, it is noted that no party's claim will be afforded priority status, pursuant to the Court's findings *supra* on Sill's Motion for Summary Judgement (as to its fee) and Paragon's/Miller's Motion for Summary Judgment (as to their attorney's fees).  Also, it is summarily noted that the Court has recognized all asserted claims as being valid, with the only distinguishing feature being whether each specific claim is directly against the *res* in question (the fire insurance proceeds).  As to that distinction, the following chart indicates the status of each such claim:[35]

---

[35]The Court notes that Paragon did not move for summary judgment on the first claim listed in the chart, its claim for $684,772, for all of the fire insurance proceeds not related to real property and/or building damage.  Thus, the Court has not previously had the opportunity to discuss to what extent this claim is against the *res* currently being held by the Court.  It goes without saying, however, that Paragon, as owner of all non-realty property that was destroyed or damaged as a result of the fire, is here claiming an interest in the subject fire insurance proceeds.

| CLAIMANT | CLAIM | AGAINST *RES* HELD BY COURT? |
|---|---|---|
| Paragon | **$684,772**, as to all proceeds not related to real property and/or building damage, as coverage for items owned by Paragon and/or business interruption | Yes |
| Paragon/Miller | **15%** of interpleaded fund, for attorney's fees | Yes |
| Miller | **$650,041**, as to that portion of insurance proceeds that corresponds to value of damage to real property, as owner of real estate occupied by Paragon | Yes |
| Sill | **7.5%** of interpleaded fund, for services rendered to Paragon under Loss Consultants and Appraisers Agreement | Yes |
| Roy Rhodes | **$234,877**, as to Rhodes's claim for 35% of 98% of value of insurance proceeds that are attributable to non-realty property, as owner of 35% interest in "Roy Rhodes Championship Calls" division of Paragon | Yes |
| Roy Rhodes | **$258,125**, to satisfy judgment as to breach of employment contract claim | No |
| Jimmie Rhodes | **$52,869**, pursuant to promissory note previously executed by Paragon, computed as follows:<br>• $50,000 (principal amount of note)<br>• +$2,869 (6% interest (payable beginning October 8, 2009)), | No |
| Chase | **$252,331**, to satisfy judgment as to mortgage claim, computed as follows: | Yes |

49

| | | |
|---|---|---|
| | <ul><li>$234,812 (principal amount of note)</li><li>+ $13,747 (interest)</li><li>+ $3,772 (attorney's fees/costs)</li></ul> | |
| Chase | **$217,348**, to satisfy judgment on non-mortgage promissory note executed by Paragon, computed as follows: <ul><li>$205,333 (base amount of note)</li><li>+ $8,711 (interest at prime + 3%)</li><li>+ $3,304 (attorney's fees and other charges)</li></ul> | No |
| Chase | **$97,217**, to satisfy judgment on non-mortgage promissory note executed by non-party Captiva and guaranteed by Paragon, computed as follows: <ul><li>$89,528 (based amount of note)</li><li>+ $6,250 (interest at 10.24%)</li><li>+ $1,439 (attorney's fees and other charges)</li></ul> | No |

In determining how to distribute the interpleaded funds, the Court is reminded that an interpleader action is governed by equitable principles. "Accordingly, in determining the manner in which interpleaded funds should be distributed, the district court sits as a court of equity, possessing the 'remedial flexibility' to 'do complete equity between the parties.'" Great Am. Ins. Co. v. Spraycraft, Inc., 844 F. Supp. 1188, 1191 (S.D. Ohio 1994) (quoting Bricks Unlimited, Inc. v. Agee, 672 F.2d 1255, 1261 (5th Cir. 1982) (which cites Humble Oil & Refining Co. v. Copeland, 398 F.2d 364, 368 (4th Cir. 1968); Brantley v. Skeens, 105 U.S. App. D.C. 246, 266 F.2d 447, 452 (D.C. Cir. 1959); 48 C.J.S.

Interpleader § 52 at 226 (1981)).  Further, the Supreme Court provides the

following general guidance, as to the Court's equity jurisdiction:

> "An appeal to the equity jurisdiction conferred on federal district
> courts is an appeal to the sound discretion which guides the
> determinations of courts of equity." . . .  The essence of equity
> jurisdiction has been the power of the Chancellor to do equity and to
> mould each decree to the necessities of the particular case.  Flexibility
> rather than rigidity has distinguished it.  The qualities of mercy and
> practicality have made equity the instrument for nice adjustment and
> reconciliation between the public interest and private needs[,] as well
> as between competing private claims.

Hecht Co. v. Bowles, 321 U.S. 321, 329-30, 64 S. Ct. 587, 88 L. Ed. 754 (1944)

(quoting Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S. Ct. 7, 88 L. Ed. 9

(1943)).  Furthermore, as the Court previously noted, priority of distribution in

interpleader actions goes to those claimants who have a claim in the specific *res*

held by the Court, rather than having general, unrelated claims against the

stakeholder. United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985).

Based on these principles, then, the Court concludes that there is no genuine

issue of material fact as to the same and determines that, with the exception of

Paragon's claim for $684,772 (which corresponds to all insurance proceeds not

related to real property and/or building damage) and Miller's claim for $650,041

(which corresponds to the value of the damage to the realty), all claimants with

claims directly against the *res* are entitled to full payment of their claims from the

interpleaded fund.  With regard to Paragon's claim, it is Paragon's excessive

indebtedness that has necessitated the instant interpleader action.  Therefore, it

51

will receive payment from the interpleaded funds only to the extent that any amount remains after payment of all other valid claims that have been lodged by the valid creditors against Paragon, in this action. As to Miller's claim, as noted above, Miller agrees (and rightfully so) that its claim should be subject to certain other claims. Docs. #81, #83, #88, #100. Thus, it is entitled to its claim for $650,041, subject to the following: its 15% claim for attorney's fees; Sill's claim for 7.5% for services rendered to Paragon under the Loss Consultants and Appraisers Agreement; and Chase's mortgage claim for $252,331.

Therefore, based on the amount currently on deposit with the Court ($1,334,813), the following amounts will be distributed, to the claimants who have made claims against the *res* being held by the Court:

| CLAIMANT | AMOUNT TO BE DISTRIBUTED FROM INTERPLEADED FUND ($1,334,813) |
|---|---|
| Paragon/Miller | **$200,222**, for payment of attorney fees (15% of interpleaded fund) |
| Miller | **$251,451**, for that portion of insurance proceeds that corresponds to value of damage to real property, subject to certain other claims, computed as follows:<br>• $650,041 (portion of insurance proceeds that corresponds to value of damage to real property)<br>• minus $97,506 (15% for that portion of the payment of Paragon's/Miller's attorney fees that is attributed to Miller's share)<br>• minus $48,753 (7.5% for that portion of the payment to Sill that |

| | is attributed to Miller's share) <br> • minus $252,331, for Chase's mortgage claim |
|---|---|
| Sill | **$100,111**, for services rendered to Paragon under Loss Consultants and Appraisers Agreement (7.5% of interpleaded fund) |
| Roy Rhodes | **$234,877**, for claim for 35% of 98% of value of insurance proceeds that are attributable to non-realty property, as owner of 35% interest in "Roy Rhodes Championship Calls" division of Paragon |
| Chase | **$252,331**, to satisfy judgment as to mortgage claim |

After making the above distributions from the fund, there will be **$295,821** remaining. Thus, there are insufficient funds to fully pay-off the non-*res* claimants. The parties have not proposed how to proportion the remaining funds, in this scenario, so using its equitable powers, the Court finds that there is no genuine issue of material fact, in concluding that, as to the remaining claimants who have asserted valid claims against Paragon that are not specifically tied to the fire insurance proceeds, the same are entitled to certain percentages/amounts of said remainder, which are roughly equal to their proportionate share of the outstanding claims.

Thus, the Clerk is to distribute the following percentages/amounts to the non-*res* claimants:

| CLAIMANT | CLAIM | % OF REMAINING INTER-PLEADED FUND | AMOUNT TO BE DISTRIBUTED FROM REMAINING INTERPLEADED FUND ($295,821) |
|---|---|---|---|
| Roy Rhodes | **$258,125**, to satisfy judgment as to breach of employment contract claim | 41.3% | **$122,174** |
| Jimmie Rhodes | **$52,869**, pursuant to promissory note previously executed by Paragon | 8.5% | **$25,145** |
| Chase | **$217,348**, to satisfy judgment as to non-mortgage promissory note executed by Paragon | 34.7% | **$102,650** |
| Chase | **$97,217**, to satisfy judgment as to non-mortgage promissory note executed by non-party Captiva and guaranteed by Paragon | 15.5% | **$45,852** |

To the extent AEIC deposits an additional sum into the interpleaded fund,

pursuant to the claim that is still pending on the insurance policy, which is less

than or equal to $425,332,[36] such additional sum shall be distributed as follows:

---

[36]If AEIC deposited more than $425,332, all of the non-*res* claims could be paid in full, thus entitling Paragon to distribution on its claim for $684,772. Such sum was computed as follows:

    $425,332
-$  63,729  (15% to Paragon/Miller for attorney's fees)
-$  31,865  (7.5% to Sill for payment under Loss Consultants and Appraisers Agreement)
-$135,951  (to Roy Rhodes, for remainder owed on breach of employment

- 15% to Paragon/Miller for payment of attorney fees

- 7.5% to Sill, for services rendered to Paragon under Loss Consultants and Appraisers Agreement

- the remaining 77.5% to be divided as follows:

  - 41.3% to Roy Rhodes, to satisfy judgment as to breach of employment contract claim
  - 8.5% to Jimmie Rhodes, pursuant to promissory note previously executed by Paragon
  - 34.7% to Chase, to satisfy judgment as to non-mortgage promissory note executed by Paragon
  - 15.5% to Chase, to satisfy judgment as to non-mortgage promissory note executed by non-party Captiva and guaranteed by Paragon

To the extent AEIC deposits an additional sum into the interpleaded fund,

pursuant to the claim that is still pending on the insurance policy, which is greater

than $425,332, such amount greater than $425,332 shall be distributed as

follows:

- 15% to Paragon/Miller for payment of attorney fees

- 7.5% to Sill, for services rendered to Paragon under Loss Consultants and Appraisers Agreement

- Remainder to Paragon

---

|           | contract judgment)                                                          |
|-----------|-----------------------------------------------------------------------------|
| -$ 27,724 | (to Jimmie Rhodes, for remainder owned on promissory note claim)            |
| -$114,698 | (to Chase, for remainder owed on first non-mortgage promissory note claim)  |
| -$  51,365 | (to Chase, for remainder owed on second non-mortgage promissory note claim) |
| $0        |                                                                             |

III.    Conclusion

    A.    <u>Motion for Summary Judgment (and Motion for Distribution of Funds)</u>
<u>by Miller, in Favor of Itself, Sill and Chase (Docs. #81, as amended by</u>
<u>Docs. #83, #88)</u>

    The Court SUSTAINS Miller's Motion for Summary Judgment (Docs. #81, as

amended by Docs. #83, #88), as to whether its claim against the $650,041 sum is

valid and is against the *res* currently being held by the Court, and as to its request

for the sum of $650,041, subject to the claims of Sill, Paragon/Miller (for attorney

fees) and Chase (for judgment on mortgage).

    B.    <u>Motion for Summary Judgment by Roy and Jimmie Rhodes, in Favor</u>
<u>of Themselves (Doc. #82)</u>

    The Court SUSTAINS the Motion for Summary Judgment by Roy and Jimmie

Rhodes (Doc. #82), as to the following: (1) that Roy Rhodes has a valid claim for

$234,877 against Paragon (with regard to his claim for 35% of 98% of the value

of the insurance proceeds that are attributable to the non-realty property as owner

of a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon),

which <u>is</u> against the *res* currently being held by the Court; (2) that Roy Rhodes has

a valid claim for $258,125 against Paragon (as a result of a state court judgment

for a breach of employment contract), which <u>is not</u> against the *res* at issue in the

present case; and (3) that Jimmie Rhodes has a valid claim for $50,000 plus

$2,869 in interest against Paragon, which <u>is not</u> against the *res* at issue in the

present case.  Further, the Court SUSTAINS said Motion, as to Roy Rhodes's

request for the sum of $234,877, in full satisfaction of his claim for 35% of 98% of the value of the insurance proceeds that are attributable to non-realty property, as owner of a 35% interest in the "Roy Rhodes Championship Calls" division of Paragon, but OVERRULES the same, as to whether Roy Rhodes and Jimmie Rhodes are entitled to full satisfaction of their other two claims (Roy Rhodes's claim for $258,125 and Jimmie Rhodes's claim for $50,000 plus $2,869 in interest), given that such claims are not against the *res* in question and, thus, are not entitled to full payment, given the size of the remaining interpleaded fund, after payment of all claims made directly against the *res*.

C.     <u>Motion to Dismiss Claims of Roy and Jimmie Rhodes by Paragon (Doc. #93)</u>

The Court OVERRULES Paragon's Motion to Dismiss Claims of Roy and Jimmie Rhodes (Doc. #93).

D.     <u>Motion for Summary Judgment by Sill, in Favor of Itself (Doc. #95)</u>

The Court OVERRULES Sill's Motion for Summary Judgment (Doc. #95), as to whether its claim is entitled to priority status, but SUSTAINS the same, as to whether its claim for 7.5% of the interpleaded fund is valid, <u>is</u> against the *res* currently being held by the Court, and as to whether it is entitled to full satisfaction of its claim.

E.   Motion for Summary Judgment by Paragon and Miller, in their Favor
     (Attorney's Fees) (Doc. #100)

The Court OVERRULES Paragon's and Miller's Motion for Summary

Judgment (Doc. #100), as to whether their claim for 15% of the interpleaded fund

for payment of attorney's fee is entitled to priority status, but SUSTAINS the

same, as to whether said claim is valid, is against the *res* currently being held by

the Court, and as to whether they are entitled to full satisfaction of the same.

F.   Motion for Summary Judgment by Roy and Jimmie Rhodes, Against
     Miller (Doc. #135)

The Court OVERRULES the Rhodes's Motion for Summary Judgment (Doc.

#135), as to whether Paragon fraudulently transferred an insurance claim to Miller.

G.   Motion for Summary Judgment by Chase, in Favor of Itself (Doc.
     #171)

The Court SUSTAINS Chase's Motion for Summary Judgment (Doc. #171),

as to whether its claims on its three outstanding notes are valid, as to whether its

claim related to the mortgage is against the *res* currently being held by the Court,

and as to whether it is entitled to full satisfaction of its claim related to the

mortgage in the sum of $252,331, but OVERRULES the same, as to whether

Chase is entitled to full payment of its claims related to the two non-mortgage

promissory notes (in the sums of $217,348 and $97,217), given that such claims

are not against the *res* in question and, thus, are not entitled to full payment, given

58

the size of the remaining interpleaded fund, after payment of all claims made directly against the *res*.

H.    Order to Clerk of Courts to Distribute Certain Sums to Various Interpleader Parties

The Clerk of Courts is ordered to distribute the following sums from the interpleaded fund (in the sum of $1,334,813) currently being held on deposit with this Court:

| CLAIMANT | DISTRIBUTION FROM INTERPLEADED FUND ($1,334,813) |
|---|---|
| Paragon/Miller | $200,222 |
| Miller | $251,451 |
| Sill | $100,111 |
| Roy Rhodes | $234,877 |
| Chase | $252,331 |
| Roy Rhodes | $122,174 |
| Jimmie Rhodes | $25,145 |
| Chase | $102,650 |
| Chase | $45,852 |

Further, to the extent AEIC deposits an additional sum into the interpleaded fund, pursuant to the coverage claim that is still pending on the insurance policy, which is less than or equal to $425,332, such additional sum shall be distributed as follows:

59

- 15% to Paragon/Miller

- 7.5% to Sill

- Remaining 77.5%, divided as follows:

  - 41.3% to Roy Rhodes
  - 8.5% to Jimmie Rhodes
  - 34.7% to Chase
  - 15.5% to Chase

To the extent AEIC deposits an additional sum into the interpleaded fund, pursuant to the coverage claim that is still pending on the insurance policy, which is greater than $425,332, the amount that is greater than $425,332 shall be distributed as follows:

- 15% to Paragon/Miller

- 7.5% to Sill

- Remaining 77.5% to Paragon

I.   Claims Remaining in this Litigation

There are two issues left for resolution in this litigation, both pending between Paragon and AEIC, to wit: (1) the coverage dispute regarding electronic data, processing/storage, and outdoor property coverage relative to the loss of trees and shrubs; and (2) a bad faith claim. See Doc. #164. With regard to the coverage dispute, Paragon and AEIC have now filed stipulations as instructed by the Court. Id.; Docs. #165, #167. Further, AEIC has filed a Motion for Summary Judgment and Paragon has responded. Docs. #166, #170. The Court will render a

60

decision on this Motion forthwith and, to the extent any additional funds are deposited with the Court pursuant to that Decision, the Clerk will distribute them as provided above.  At such time, the Court will dismiss all interpleader Defendants from this litigation.  With regard to the bad faith claim, the Court previously overruled AEIC's Motion for Leave to File a Motion for Summary Judgment, without prejudice to renewal after the Court resolved all matters pertaining to the payment and distribution of the insurance proceeds. Doc. #164 at 8.  Given the proximity of the completion of the same, the Court hereby grants leave to AEIC to file said Motion for Summary Judgment within 21 calendar days of the date of this Decision.

September 21, 2010

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies  to:
Counsel of record