IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PARAGON MOLDING, LTD.,          :

    Plaintiff,

    v.                          :

SAFECO INSURANCE CO.,

    Defendant.                  :

Case No. 3:05-cv-422

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING AS MOOT PLAINTIFF'S
MOTION TO STRIKE AFFIDAVIT OF MICHAEL MILLS (DOC. #206);
OVERRULING AS MOOT DEFENDANT'S MOTION TO STRIKE
AFFIDAVIT OF DON LITTLE (DOC. #207); SUSTAINING IN PART AND
OVERRULING IN PART DEFENDANT'S MOTION TO STRIKE
AFFIDAVITS OF VICKI MILLER AND MICHAEL WERNER (DOC. #219);
SUSTAINING DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (DOC. #192); JUDGMENT TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

---

Plaintiff Paragon Molding, Ltd. ("Paragon") filed suit against American

Economy Insurance Company ("AEIC"), incorrectly identified in the Complaint as

Safeco Insurance Company, alleging breach of contract and bad faith in connection

with AEIC's handling of an insurance claim, following a fire that destroyed a

portion of Paragon's premises and much of its inventory.  AEIC, Paragon, and

various intervening parties have resolved all issues concerning the breach of

contract claim.  All that remains is Paragon's claim that AEIC acted in bad faith in

its handling of the insurance claim. This Court's jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

This matter is currently before the Court on AEIC's Motion for Partial Summary Judgment on the bad faith claim.[1] Doc. #192. The following related motions are also pending: (1) Paragon's Motion to Strike Michael Mills' Affidavit, Doc. #206; (2) AEIC's Motion to Strike Don Little's Affidavit, Doc. #207; and (3) AEIC's Motion to Strike the Affidavits of Vicki Miller and Michael Werner, Doc. #219. *See* Doc. #261.

## I.    Background and Procedural History[2]

On January 22, 2005, a fire destroyed a portion of Paragon's injection molding facility in West Milton, Ohio, along with part of the inventory. The fire interrupted all utility services. Vicki Miller Aff. ¶¶13, 16; Doc. #208-1. Paragon reported the claim to its insurance carrier, AEIC, on January 24, 2005. Paul Smith Aff. ¶4; Doc. #233-1. Paragon ultimately sought insurance proceeds for: (1)

---

[1] AEIC has requested oral argument on its motion. In the Court's view, however, oral argument is not "essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." *See* S.D. Ohio Civ. R. 7.1(b)(2). Accordingly, the Court denies AEIC's request.

[2] As required when deciding a motion for summary judgment, the facts are construed in a light most favorable to the non-moving party, in this case, the plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

emergency expenses; (2) damage to the building; (3) loss of business personal property; and (4) business interruption.

Paul Smith, Jr., an insurance adjuster for AEIC, was assigned to handle the claim. He visited the Paragon site on January 25, 2005, and spoke to James and Vicki Miller, Paragon's owners. Smith Aff. ¶¶4-5. Smith authorized 3-Way Electric, Inc., to make electrical repairs so that business could resume as soon as possible. Vicki Miller Aff. at ¶21. On January 27, 2005, AEIC placed $25,000 in a FirstCash Plus account from which Paragon could make disbursements as needed for emergency electrical work and temporary generators. Smith Aff. at ¶8.[3]

Smith also hired a firm to conduct an investigation into the cause of the fire. *Id.* at ¶4(b). On February 1, 2005, the investigator reported that although the exact cause was not yet determined, a human act was responsible, and the Fire Marshal's investigation was ongoing. *Id.* at ¶14. It was later determined that the fire was the result of arson, and had started in a utility closet. *Id.* at ¶19. AEIC took statements of Paragon employees, and obtained cellular phone records to verify that James and Vicki Miller were not at the facility when the fire occurred. *Id.* at ¶¶16-17, 22. On March 11, 2005, Smith also hired an accountant to determine Paragon's financial condition at the time of the fire. *Id.* at ¶26. The

---

[3]  Michael Mills's original affidavit states that AEIC deposited an additional $10,000 on January 31, 2005. Mills Aff. ¶11; Doc. #192-1. His Amended Affidavit recants this statement. Mills Am. Aff. ¶12 n.2; Doc. #220-1.

3

accountant determined that Paragon was "growing and doing well." *Id.* at ¶30. It does not appear that anyone has ever been charged with starting the fire.

Paragon hired Alex N. Sill Company International Loss Consultants and Appraisers ("Alex Sill") to settle the insurance claim with AEIC. Vicki Miller Aff. ¶19. Michael Werner, of Alex Sill, was the General Adjuster assigned to handle Paragon's claim. Werner Aff. ¶8; Doc. #208-3. On February 22, 2005, Alex Sill sought payment of over $100,000 in emergency repairs incurred by Paragon. Smith responded that the cause and origin of the fire was still under investigation. Smith Aff. ¶20.

On March 14, 2005, the President of 3-Way Electric contacted Paragon, demanding immediate payment of $158,371.00. The vendors who had supplied equipment for the project were demanding payment and threatening to sue 3-Way Electric. He, in turn, threatened to sue Paragon, and to remove all of the electrical equipment 3-Way had installed. Vicki Miller Aff. ¶¶24, 43. In response to these demands, on March 16, 2005, Paragon filed suit against AEIC, alleging breach of contract and bad faith. *Id.* at ¶46.

On April 1, 2005, the parties reached an agreement concerning the undisputed losses, and AEIC agreed to advance $768,405.03. Although the Fire Marshal's investigation was still ongoing, AEIC had completed its internal investigation. Smith Aff. ¶¶36, 45. AEIC therefore agreed to deposit $193,537.03 into Paragon's account, and issue another check for $574,868.00.

Vicki Miller Aff. at ¶49.  Paragon voluntarily dismissed the suit on April 11, 2005.

Mills Am. Aff. at ¶19.

In the meantime, Smith and Werner each obtained estimates for repairing the

damage to the building.  On March 11, 2005, Werner sent Smith a very detailed

estimate, prepared by Bud Gibson, a contractor for Alex Sill, of $1,773,538.63.

Werner Aff. ¶11; Ex. A to Werner Aff.  Werner requested a $250,000 advance.

Mills Am. Aff. ¶17.  Smith obtained two repair estimates, one from Fickert

Construction Company, for $1,360,000, and one from Paul Davis National

Construction, for $1,315,539.48.  *Id.* at ¶13.

Fickert's estimate was based on the cost of repairing a 20,000 square foot

area.  Smith Aff. ¶18.  When Smith later determined that the actual area was only

14,000 square feet, he asked for a revised estimate from Fickert.  *Id.* at ¶¶22-23.

On or about March 31, 2005, Smith told Werner that Fickert had submitted a

revised quote of $958,800 for the building repairs.  Werner Aff. ¶15.  Werner

requested an itemized breakdown of the Fickert estimate to help explain the large

gap between that estimate and his own $1,773,538.63 estimate.  In response, on

May 27, 2005, Smith sent him a list of rooms, a description of the structure, and a

handwritten 2-page diagram obtained from Fickert.  Ex. C to Werner Aff.  Werner

requested further details, but never received them.  Werner Aff. ¶¶23, 26-32.

Werner did, however, receive a detailed estimate from Paul Davis National

Construction.  *Id.* at ¶24.  He then sent Smith a list of differences between that

5

estimate and his own, asking Smith for comments, and requesting a meeting. *Id.* at ¶33.

On August 12, 2005, Smith sent Werner a letter stating that Fickert and Paul Davis had agreed on a building replacement cost of $975,000. *Id.* at ¶35; Smith Aff. ¶73. On that same date, Smith offered to settle the claim for damage to the building for $1,133,360.40, which included the $975,000.00, plus amounts already advanced for electrical work and other emergency repairs. Ex. 85 to Smith Aff. Werner responded by again requesting itemized details of the revised estimates. Werner Aff. ¶38.

On May 3, 2005, Werner submitted a claim for loss of business personal property with a replacement value of $913,197.09. *Id.* at ¶40. The list consisted of over 1400 individual items. Ex. U to Mills Am. Aff. AEIC maintains that it repeatedly asked that the original spreadsheet be provided in an unlocked electronic format so that it would not have to be re-typed, but Werner refused to provide it, thereby delaying the processing of the claim for many weeks. Mills Am. Aff. ¶25; Smith Aff. ¶¶63-66. Werner testified that he decided that he would not provide it until he received the detailed building damage estimates he had requested. 4/12/11 Werner Dep. at 115-16; Doc. #231-1, PageID##3718-19.

On August 26, 2005, Smith sent Werner an email indicating that he had completed his review of the business personal property claim, and had omitted those items that appear to have been in the tool room/machine shop since there

6

was no fire damage in that area. Werner responded on August 29, 2005, expressing his disagreement, and noting that the equipment at issue would have suffered damage due to smoke and heat. He nevertheless agreed to forward the information to the Millers. Smith Aff. ¶79; Ex. 89 to Smith Aff.

On September 7, 2005, Werner submitted a tentative business interruption/ extra expense claim for $311,499.00. Mills Am. Aff. ¶30. On September 30, 2005, before AEIC could finish evaluating the personal property loss and business interruption claims, Paragon submitted a formal Proof of Loss to AEIC. Mills Am. Aff. at ¶32. The total amount was $2,891,735.12, broken down as follows: (1) $1,733,538.63 for building repairs; (2) $913,197.09 for loss of business personal property; and (3) $250,000.00 for loss of business income, less a $5,000 deductible. *Id.*; Ex. FF to Mills Am. Aff.

On October 19, 2005, AEIC rejected the Proof of Loss, noting ongoing disputes concerning the value of each claim. AEIC invoked its contractual right to an appraisal. Mills Am. Aff. ¶33; Ex. GG to Mills Am. Aff. The relevant contractual provision states: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire." Doc. #192, PageID#1935.

On November 10, 2005, Paragon filed another lawsuit in the Miami County Court of Common Pleas, again alleging breach of contract and bad faith. AEIC

7

removed the case to federal court based on diversity of citizenship. Eventually, the parties agreed to proceed with the appraisal process. The umpire issued a decision and award in January of 2009. As AEIC notes, the umpire's award was approximately $400,000 less than what Paragon claimed in the Proof of Loss. Doc. #79-1. Paragon went out of business in April of 2009. According to Vicki Miller, this was "largely due to the inability to collect on our fire insurance policy to keep the business running." Vicki Miller Aff. ¶87.

Additional litigation ensued concerning various policy coverage issues and distribution of the insurance proceeds. The parties finally settled those issues, leaving only AEIC's Motion for Partial Summary Judgment on the one remaining claim of bad faith. Prior to resolving that motion, the Court must first address the motions to strike certain affidavits.

## II.     Motions to Strike Affidavits

### A.     Don A. Little (Doc. #207)

Plaintiff Paragon, and Intervenor Plaintiff Miller Industries, Ltd., attached an affidavit of Don Little to their Memorandum in Opposition (Doc. #205) to AEIC's Motion for Reconsideration (Doc. #196) on the Court's decision overruling AEIC's previous Motion for Partial Summary Judgment (Doc. #186), which dealt solely with a coverage dispute. AEIC challenged Little's affidavit, arguing that it should be stricken because it does not contain a statement that it is based on personal

8

knowledge, and because the copy submitted was neither signed nor notarized. Plaintiffs subsequently submitted a signed and notarized copy, and AEIC withdrew that portion of the objection.

Because the parties have now resolved all issues surrounding the subject of the affidavit, and because the Motion for Reconsideration is no longer pending before the Court, the Court sees no reason to consider Little's affidavit. It is not relevant to the one remaining claim of bad faith. Accordingly, the Court OVERRULES AS MOOT AEIC's Motion to Strike Don Little's Affidavit, Doc. #207.

### B.    Michael Mills (Doc. #206)

Plaintiffs have moved to strike the affidavit of Michael Mills, which was attached to AEIC's Motion for Partial Summary Judgment, Doc. #192. Mills is the Senior Claims Specialist at AEIC who took over responsibility for the insurance claim once Paul Smith retired in April of 2006. Mills Am. Aff. ¶1. Plaintiffs argue that a substantial part of Mills's affidavit is not based on personal knowledge as required by Federal Rule of Civil Procedure 56(c)(4), and that the affidavit, as submitted, contains information that is not admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6).[4]

---

[4]  Federal Rule 803(6) sets forth the following exception to the hearsay rule:

> *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

AEIC denied that the original affidavit was defective. Doc. #220. In an abundance of caution, however, AEIC filed an Amended Affidavit of Michael Mills, Doc. #220-1, seeking to cure the alleged deficiencies. Attached to that Amended Affidavit are numerous exhibits supporting the statements contained therein. In the Court's view, the filing of the Amended Affidavit largely moots the objections raised in the Motion to Strike. Notably, Plaintiffs did not file a reply brief or lodge any further objections to the Amended Affidavit.

The Court has reviewed the Amended Affidavit and concludes that it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court also finds that Mills has now laid a proper foundation for the admission of the exhibits referred to in his Amended Affidavit, averring that he is a records custodian for AEIC, and that the attached exhibits are records of regularly conducted activities, satisfying the requirements of Federal Rule of Evidence 803(6). Mills Am. Aff. ¶¶2-3. The Court therefore

---

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

10

OVERRULES AS MOOT Plaintiffs' Motion to Strike [the original] Affidavit of Michael Mills, Doc. #206.

    **C.**    **Vicki Miller and Michael Werner (Doc. # 219)**

AEIC has also moved to strike the affidavits of Vicki Miller, a part-owner of Paragon, and Michael Werner, the adjuster hired by Paragon to handle the insurance claim. These affidavits were attached to Plaintiffs' Memorandum in Opposition to Defendant's Motion for Partial Summary Judgment, Doc. #208. AEIC argues that: (1) both affidavits improperly cite to numerous documents that are not contained in the record, in violation of Federal Rule of Civil Procedure 56(c); and (2) Werner's affidavit contains impermissible lay opinion testimony, in violation of Federal Rule of Evidence 701.

Although Plaintiffs requested, and were granted, an extension of time to file a memorandum in opposition to the motion to strike, *see* Doc. #222 and 4/13/11 Notation Order, no such memorandum was ever filed. AEIC's Motion to Strike is, therefore, unopposed. Nevertheless, in resolving the motion, the Court must use "a scalpel, not a butcher knife," striking only those "portions of affidavits that do not satisfy the requirements of Rule 56[c]." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009) (quoting *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007)). For the reasons set forth below, the Court SUSTAINS IN PART and OVERRULES IN PART AEIC's Motion to Strike the Affidavits of Vicki Miller and Michael Werner, Doc. #219.

11

### 1. Documents Not in Record

The affidavits of Miller and Werner refer to numerous documents that have not been made part of the record. Federal Rule of Civil Procedure 56(c)(1)(A) requires parties to support their factual assertions by "citing to particular parts of materials in the record." The advisory committee's notes to the 2010 amendment to Rule 56 specifically state that, "[m]aterials that are not yet in the record-- *including materials referred to in an affidavit or declaration*--must be placed in the record." Fed. R. Civ. P. 56 advisory committee notes (emphasis added). If they are not made part of the record, "the existence of those documents and the affiant's discussion of them is wholly unsupported by the record," and cannot be considered for purposes of summary judgment. *Loadman Group, LLC v. Banco Popular N.A.*, No. 4:10cv1759, 2013 WL 1154528, at *9 (N.D. Ohio Mar. 19, 2013).

AEIC cites to numerous documents related to the building repair estimates, personal property estimates, and formal Proof of Loss, and to eleven other documents cited in Miller's affidavit that had not yet been made part of the record at the time it filed its Motion to Strike. As discussed in greater detail below, contrary to AEIC's allegations, some of these documents were, in fact, already in the record, having been attached to Paul Smith's Affidavit, Doc. #233-1. Although it certainly would have been preferable for Plaintiffs to cite to those documents, the Court will consider them since they are part of the record.

12

AEIC also concedes that, "[b]y comparing date and description," Doc. #219, PageID#2790 n.3, it appears that some of the allegedly missing documents were subsequently attached as exhibits to Michael Mills's Amended Affidavit, which AEIC filed with the Court.  AEIC argues, however, that it has no way of verifying that these are the same documents referred to in Werner's and Miller's affidavits. In the Court's view, it is highly unlikely that there are other documents matching the same "date and description" of those attached to Mills's Amended Affidavit. Therefore, to the extent that those documents can be easily identified and are now part of the record, the Court will consider them in connection with the allegedly defective affidavits.  The Court now turns to the specific objections raised by AEIC.

### a. Buildings Repair Estimates

Miller and Werner both refer to a building repair estimate submitted by Alex Sill to AEIC in March of 2005.  Miller Aff. ¶42; Werner Aff. ¶11.  This appears to have been attached as Exhibit 30 to Smith's Affidavit.  Werner also refers to a "list of differences" between the estimate obtained by Paragon and the one submitted by Paul Davis National Construction. Werner Aff. ¶33.  Again, it appears that this is attached as Exhibit 77 to Smith's Affidavit.  Accordingly, the Court OVERRULES AEIC's motion to strike statements referring to these documents.

13

### b. Personal Property Estimates

Miller and Werner each refer to an estimate submitted on their behalf for the replacement cost of damaged personal property of the business. Miller Aff. ¶58; Werner Aff. ¶40. Because this document was later submitted as Exhibit U to Mills's Amended Affidavit, the Court OVERRULES AEIC's motion to strike these two paragraphs from the affidavits.

However, Miller and Werner also refer to the competing personal property estimate submitted by AEIC. Miller Aff. ¶76; Werner Aff. ¶43. Because AEIC's estimate has not been made part of the record, the Court SUSTAINS AEIC's motion and strikes these two statements from the affidavits.

### c. Proof of Loss

The formal Proof of Loss referred to in ¶82 of Miller's affidavit and ¶¶48-49 of Werner's affidavit was attached to Mills's Amended Affidavit as Exhibit FF. Accordingly, the Court OVERRULES AEIC's motion to strike these paragraphs from the affidavits.

### d. Other Documents Referred to in Miller Affidavit

AEIC also objects to the consideration of several other statements in Miller's affidavit because the documents referred to have not been made part of the record. This appears to be true with respect to each of the following:

- Bank statement from Safeco FirstCash Plus (Miller Aff. ¶ 32)
- AEIC's reply to the Ohio Insurance Commission (Miller Aff. ¶ 33)
- March 2, 2005, letter from AEIC's fire investigator to Paragon and subsequent fax from Paragon to AEIC (Miller Aff. ¶ 39)

14

- "Records" reflecting discussion between 3-Way Electric and Paul Smith regarding payment of fees (Miller Aff. ¶ 45)
- March 31, 2005, email and accompanying pictures sent by James Miller to Paul Smith regarding funds to stabilize the damaged building (Miller Aff. ¶ 48)

Because these statements are not supported by the record, the Court SUSTAINS AIEC's motion and strikes each of these paragraphs from Miller's affidavit.

However, the February 8, 2005, letter from Mark Bradley to Paul Smith, Miller Aff. ¶ 35, was included as Exhibit 21 to Smith's Affidavit. Likewise, the invoices of 3-Way Electric, faxed to AEIC, Miller Aff. ¶ 36, were attached as Exhibit 24 to Smith's Affidavit, and the April 8, 2005, letter from Smith regarding demolition costs, Miller Aff. ¶ 86, was attached as Exhibit 49 to Smith's Affidavit. Because these documents are part of the record, the Court OVERRULES AEIC's motion to strike the statements referring to them.

Three other documents referred to in Miller's affidavit, not previously made part of the record, were subsequently attached to Mills's Amended Affidavit, and may, therefore, also be considered for summary judgment purposes. These include the following:

- January 24, 2005, letter from Paul Smith indicating what American Economy would need to process Paragon's claim (Miller Aff. ¶ 18), attached as Exhibit B to Mills's Amended Affidavit
- February 28, 2005, letter from Paul Smith to Paragon (Miller Aff. ¶ 38), attached as Exhibit J to Mills's Amended Affidavit
- September 7, 2005, letter from Alex N. Sill Co. to Paul Smith giving breakdown of how numbers in business interruption claim were arrived at (Miller Aff. ¶ 77), attached as Exhibit DD to Mills's Amended Affidavit

15

### 2. Werner's Lay Witness Testimony

AEIC also moves to strike paragraphs 55 and 56 of Werner's affidavit, in which he states that "[b]ased on [his] nineteen (19) years as a Claims Adjuster, the handling of this claim by the insurance company was highly unusual." He then delineates seven reasons why he believes it was so unusual. Werner Aff. ¶¶55-56. Notably, Werner has not been qualified or identified as an expert witness in this case.

AEIC argues that, under Federal Rule of Evidence 701, an insurance adjustor may not use his specialized knowledge to offer a lay opinion concerning whether a claim was handled appropriately. In support, AEIC cites to *Smith v. Allstate Insurance Company*, No. 1:05-cv-329, 2007 U.S. Dist. LEXIS 95674 (S.D. Ohio June 11, 2007). In *Smith*, the court held that, because Rule 701(c) specifically excludes admission of lay witness opinions "based on scientific, technical, or other specialized knowledge," the insurance adjuster could not offer a lay opinion that was premised on his specialized knowledge and lengthy experience in the field. *Id.* at **3-4.

*Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004) is also almost directly on point. There, the court held that the district court erred in allowing a bank employee to testify, as a lay witness, that the bank transactions at issue were not typical. In so holding, the court noted that the employee's

16

testimony was based on his extensive experience in international banking. *Id.* at 181-82.

The Sixth Circuit also addressed this issue in *United States v. White*, 492 F.3d 380 (6th Cir. 2007). In *White*, the court considered whether Medicare auditors, who had "specialized or technical knowledge," but were also "personally involved in the factual underpinnings of the case," could testify as lay witnesses about their understanding of Medicare regulations. The court concluded that because the average lay person does not have a working knowledge of Medicare regulations, and because the witnesses "relied to a significant degree on specialized knowledge acquired over years of experience as Medicare auditors," the district court erred in allowing them to "effectively testify as experts without first being qualified." *Id.* at 403-04.

Based on this case law, the Court finds that because Werner's opinion -- that AEIC's handling of Paragon's insurance claim was "highly unusual" – is necessarily based on his specialized knowledge acquired over the years he worked as an insurance adjustor, it is inadmissible as lay witness testimony. The Court therefore SUSTAINS AEIC's motion to strike paragraphs 55 and 56 from Werner's affidavit.

17

III.    **Motion for Partial Summary Judgment**

Having resolved these evidentiary issues, the Court turns to the dispositive

motion.  AEIC has moved for partial summary judgment on the only remaining

claim in this case, Paragon's claim that AEIC acted in bad faith in its handling of

the insurance claim.  For the reasons set forth below, the Court concludes that

AEIC is entitled to summary judgment in its favor on this claim.

A.    **Standard of Review**

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact.  *Id.* at 323; *see also Boretti v. Wiscomb*, 930

F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241,

1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986).  Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990); *see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561 (7th Cir. 1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992), *cert. denied*, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### B.  Bad Faith Claim

AEIC maintains that, based on the evidence presented, no reasonable jury could find that AEIC failed to act with reasonable justification in handling the insurance claim. In the alternative, AEIC argues that Paragon's claim for punitive damages must dismissed. Paragon contends that genuine issues of material fact preclude summary judgment on both claims.

### 1.  Reasonable Justification

In *Hoskins v. Aetna Life Insurance Company*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (Ohio 1983), syl. ¶1, the court held that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of

this duty will give rise to a cause of action in tort against the insurer."  In order to show that an insurer failed to exercise good faith in processing an insurance claim, the plaintiff must prove that there was no "reasonable justification" for the actions taken.  *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (Ohio 1994), syl. ¶1.  Intent to injure need not be shown.  *Id.* at 554-55, 644 N.E.2d at 399-400.

Bad faith claims encompass more than just an outright refusal to pay.  A bad faith claim may also arise from an unreasonably low settlement offer.  *Mundy v. Roy*, 2d Dist. No. 2005–CA–28, 2006-Ohio-993, at ¶21.  It may also be based on an unreasonable delay in processing the claim.  The law implies that insurance claims will be processed within a reasonable period of time.  *155 N. High Ltd. v. Cincinnati Ins. Co.*, 75 Ohio App.3d 253, 258, 599 N.E.2d 352, 355 (Ohio Ct. App. 1991).  However, delay alone is insufficient to establish bad faith.  To recover on a bad faith claim relating to delay, the plaintiff must prove that the claim was "unreasonably delayed and the insurer had no justification for such . . . delay."  *Price v. Dillon*, 7th Dist. Nos. 07–MA–75, 07–MA–76, 2008-Ohio-1178, at ¶35 (internal quotation omitted).

In this case, Plaintiffs maintain that their bad faith claim "is directed at AEIC's handling of the claim, and not the ultimate payment."  Doc. #208, PageID#2093.  They generally complain that AEIC failed to respond to requests for additional information, and failed to make settlement offers within a reasonable

21

time period.  Although Plaintiffs cite ten individual incidents that allegedly demonstrate bad faith, those incidents may be grouped as follows:  (1) those related to the alleged delay in paying for emergency repairs; (2) those related to the building damage claim; (3) those related to the business personal property claim; and (4) those related to the business interruption claim.

### a.  Payment for Emergency Repairs

Plaintiffs first allege that: (1) "AEIC delayed for a long period of time in taking any action in this case"; (2) "AEIC delayed for a long period of time in providing emergency expenses including allegedly making a mistake about who was sending the check, and then inserting the wrong payee on the check"; and (3) "AEIC failed to pay for emergency restart-up expenses for a long period of time despite promising to do so."  Doc. #208, PageID##2082-83.  Paragon maintains that it should not have taken four months and the filing of a lawsuit to prompt AEIC to make these payments.

The Court finds that, based on the evidence presented, no reasonable jury could find that the alleged delays were unreasonable or unjustified.  First, it cannot be said that AEIC delayed taking any action for a long period of time.  The undisputed facts show that Paul Smith of AEIC visited Paragon the day after the loss was reported, began the claim process, and immediately ordered an investigation into the cause of the fire.  Within one week after the loss was reported, Smith approved expenditures for temporary offices and generators to

22

provide emergency power, advanced $25,000 for emergency expenses, and contacted two contractors to provide estimates for demolishing and rebuilding the portion of the building destroyed by the fire. Smith Aff. at ¶¶4-8, 11-13.

Second, the delays in paying emergency expenses are attributable only to the ongoing arson investigation. On February 1, 2005, Smith learned that the fire was caused by a human act, whether intentional or accidental. *Id.* at ¶14. In the following weeks, AEIC's investigators interviewed Paragon employees, requested cell phone records from James and Vicki Miller to verify that they were not at the property when the fire started, and ordered a report on Paragon's financial condition. *Id.* at ¶¶15-17. On February 21, 2005, Smith learned that the fire was the result of arson, and an investigation was ongoing. *Id.* at ¶19.

The insurance policy at issue did not cover losses that resulted from fires that were intentionally set by the insured. *Id.* at ¶21. Therefore, on February 22, 2005, when Alex Sill requested payment for over $100,000 in emergency repair costs, including invoices from 3-Way Electric, Smith explained that the cause of the fire was still under investigation. *Id.* at ¶20. On March 11, 2005, Smith called 3-Way Electric concerning the outstanding invoices, and informed the company of the status of the investigation. He promised to provide an update the following week. *Id.* at ¶26.

Wanting immediate payment, 3-Way Electric threatened to sue Paragon for the outstanding bill. This prompted Paragon, on March 16, 2005, to file the first

23

suit against AEIC, alleging breach of contract and bad faith.  Vicki Miller Aff. ¶¶43,

46.  As of that date, the State Fire Marshal was still investigating the fire, and had

planned interviews and polygraph tests of several Paragon employees and Jim

Miller.  Smith Aff. ¶¶31-32.

By March 25, 2005, although the State Fire Marshal's investigation was still

ongoing, AEIC had substantially completed its own internal investigation and

decided that it could make some initial payments on the insurance claim.  *Id.* at

¶36.  On April 1, 2005, AEIC agreed to advance $768,405.03 in undisputed

losses.  Of that amount, $193,537.03 was deposited directly into the FirstCash

Plus account on April 2, 2005.  AEIC then issued a check for the remaining

amount, $574,868.00.  *Id.* at ¶¶39-41.

Unfortunately, there was a delay in issuing that check because Smith was

out of town, and did not realize that a check that large would have to be issued

manually instead of computer-generated.  When he manually issued the check on

May 12, 2005, he mistakenly included US Bank Corp., a previous mortgage holder,

among the payees.  Smith avers that this was simply an oversight.  *Id.* at ¶55.  As

soon as Werner pointed out the error, Smith immediately issued a corrected check,

dated May 18, 2005.  *Id.* at ¶57.  There is no evidence in the record from which it

could reasonably be inferred that the delay in issuing the initial check, or the

inclusion of US Bank Corp. as a loss payee, was intended to delay payment.

24

Based on the evidence of record, no reasonable jury could find that the four-month delay in making these partial payments on the claim was unreasonable or unjustified. After Smith had authorized the emergency repairs, he learned that the fire had been intentionally set. Werner admitted in his deposition that AEIC had the right to investigate the cause of the fire. 7/17/07 Werner Dep. at 84; Doc. #218-1; PageID #2517. He also testified that it would be reasonable for an insurance company to wait for the fire marshal's report before making a final determination as to the cause of the fire, to ask for cell phone records of the insured to verify their alibi, and to investigate the financial condition of the company at the time of the fire. 4/12/11 Werner Dep. at 58-59; Doc. #231-1, PageID##3661-62.

Under the circumstances presented here, it cannot be said that it was unreasonable for AEIC to refuse to pay the emergency expenses while the cause of the fire was still under investigation. *See Fabrikant v. State Farm Fire & Cas. Co.*, No. 3:11-cv-438, 2012 U.S. Dist. LEXIS 67017, at **35-36 (M.D. Pa. May 14, 2012) (holding that the insurance company did not act in bad faith in delaying a coverage decision pending an arson investigation). Notably, as soon as AEIC's internal investigation was completed, AEIC agreed to pay the undisputed losses. By mid-May of 2005, AEIC had paid more than $793,000 in undisputed claims related to the fire, even though the State Fire Marshal's investigation was still open. Smith Aff. ¶58. Werner testified that, under the circumstances, this four-

25

month timeframe was not unusual.  4/12/11 Werner Dep. at 99; PageID#3702.  In short, no reasonable jury could find that the four-month delay in paying for the emergency repairs was unreasonable or unjustified.[5]

### b. Building Damage Claim

With respect to the claim for damage to the building, Plaintiffs first argue that "AEIC failed to provide supporting documentation of their estimate of building damages made for the insurance company by A.E. Fickert Construction Company (hereafter Fickert) despite repeated requests to do so. Also, AEIC failed to produce supporting documentation for the building estimate of Paul Davis National despite numerous requests to do so."  Doc. #208, at PageID#2082.  Werner requested additional information so that he could better compare these quotes to the quote he had obtained from Bud Gibson.  Plaintiffs speculate that if AEIC had simply provided this additional documentation, they may have been able to reach a settlement, and there would have been no need to invoke the appraisal process.

AEIC argues, however, that nothing in the insurance contract or the law required AEIC to provide anything other than a square foot repair estimate.  Rob Fickert, President of A.E. Fickert Construction Company, stated that pursuant to industry standards, "[a] square foot estimate is an acceptable method where the building at issue has suffered damage requiring it to be demolished and rebuilt."

---

[5]  Smith maintains that the filing of the first lawsuit by Paragon on March 16, 2005, also delayed the handling of the claim since the parties could no longer communicate directly with each other.  Smith Aff. ¶¶35-38.

Such an estimate "contemplates the use of the available new materials which most closely resemble those originally used in the damaged structure." Fickert Aff. ¶5; Doc. #233-13, PageID#4812. Likewise, Smith avers that it was a "common practice" to obtain a square foot estimate. Smith Aff. ¶12. Plaintiffs have presented no contention to the contrary.

Moreover, regardless of what was or was not required, Smith made a concerted effort to comply with Werner's request for additional information. On May 9, 2005, he asked Fickert to submit a more detailed quote and offered to compensate him for the time spent preparing it. Smith Aff. ¶53. The revision, sent to Werner on May 27, 2005, consisted of nothing more than a list of rooms that the quote covered, and a hand-drawn 2-page diagram. Ex. 69 to Smith Aff.; Werner Aff. at ¶¶22-23. When Werner requested more details, Smith passed that request on to Fickert, but Fickert never responded. *Id.* at ¶¶23, 26-32; Smith Aff. ¶66. Under the circumstances presented here, Fickert's failure to respond to Smith's request cannot support a claim that AEIC acted in bad faith.

Werner admits that, in June of 2005, he did receive a very detailed estimate from Paul Davis National Construction. Werner Aff. ¶24; Smith Aff. ¶67. Smith paid $6,871.14 for the cost of preparing the estimate. Smith Aff. ¶71. This estimate was so detailed that Werner was able to respond with a 19-page list of differences between that quote and the one he had obtained. *Id.* at ¶67; Ex. 77 to Smith Aff. In August of 2005, Paul Davis lowered its repair estimate, agreeing to

27

do the same work set forth in its original estimate for only $975,000.00.  Smith Aff. ¶77.

Werner maintains that, despite repeated requests to Smith, he never received a detailed report of this revised estimate.  Werner Aff. at ¶25.  Smith maintains that no revisions were necessary because, although Paul Davis lowered its estimate, the quality and scope of the work had remained exactly the same. Smith Aff. ¶79.  Based on the evidence presented, no reasonable jury could find that AEIC acted in bad faith in failing to adequately respond to Werner's requests for more detailed estimates.

As further evidence of bad faith, Plaintiffs argue that AEIC caused Paul Davis National Construction to lower its repair estimate from $1,315,539.48 to $975,000.00.  Doc. #208, PageID#2082.  AEIC denies that it did anything improper, and maintains that it exerted no control over the amount of the bid. AEIC maintains that, after reviewing Fickert's competing bid, Paul Davis merely determined that it could do the same work for less money than it had originally suggested.  The Court agrees with AEIC that the lowered bid does not support a finding of bad faith on the part of the insurance company.

Finally, Plaintiffs argue that AEIC acted in bad faith by never making a "formal offer" of settlement for the building damage.  The evidence does not support this claim.  In fact, on August 12, 2005, AEIC made a written offer to settle the building damage claim for $975,000.00, and asked to be notified of a

28

decision. Smith Aff. ¶76; Ex. BB to Mills Am Aff. This explicit "offer" was reiterated on August 23, 2005, and again on September 12, 2005. Smith Aff. ¶¶78, 82; Exs. CC and EE to Mills Am. Aff. Moreover, Werner admitted at his deposition that he had received several "offers" for $975,000. 4/12/11 Werner Dep. at 162, PageID#3765.

For all of these reasons, the Court concludes that Plaintiffs have failed to establish a genuine issue of material fact as to whether AEIC acted in bad faith in connection with the building damage claim.

### c. Business Personal Property Claim

With respect to the business personal property claim, Plaintiffs argue that AEIC acted in bad faith by deciding "without reasonable explanation to omit 1,200 to 1,400 line items from the contents or personal property claim despite the fact that these items were destroyed or damaged in the fire." Plaintiffs also argue that AEIC "failed to ever submit a contents estimate that included the 1,200 to 1,400 line items, and never made any formal offer for the contents and business property loss." Doc. #208, PageID#2082.

On May 3, 2005, Werner mailed a 45-page hard copy of Paragon's business personal property estimate to Paul Smith, claiming a replacement cost of $913,197.09 and an actual cash value of $863,717.58. Werner Aff. ¶¶40, 42. That list contained over 1400 separate line items. Ex. U to Mills Am. Aff. On August 26, 2005, Paul Smith sent an email to Werner, stating, "[h]ere is the

29

reviewed contents list. I have pulled from the list equipment etc [sic] that appear[s] to be in the tool room/machine shop. In this area there was no fire damage only smoke and some heat. After your review please contact me and we will discuss." Ex. 89 to Smith Aff.; Doc. #233-9, PageID#4755.[6]

> Werner responded on August 29, 2005, as follows:

> Thank you for your version of our inventory. I cannot say I agree with you at this time about the equipment that was located in the toll [sic] room being removed. Please keep in mind that the equipment would have suffered damage due to smoke and heat. I am sending this information to the insured, James and Vicki Miller for their review along with a copy to Steve Taylor who completed the inventory. Once I hear back from them I will let you know.

Smith Aff. ¶79; Ex. 89 to Smith Aff.

On September 15, 2005, Werner emailed Smith with several questions about the business personal property estimate, specifically asking about "1200-1400 line items" that were omitted from Smith's version of the inventory. Ex. K to Werner Aff.; Doc. #208-15, PageID#2146. As previously noted, Smith's version of the contents list has not been made part of the record. Therefore, it is

---

[6] The Court notes that Plaintiffs do not allege that AEIC's four-month delay in responding to the claim for business personal property loss constituted bad faith. It is undisputed that AEIC repeatedly asked Werner to send an unlocked electronic version of the contents inventory so that the 1400 line items would not have to be re-typed, but Werner refused to do so, citing AEIC's failure to respond to *his* requests for detailed building damage estimates. Smith Aff. ¶¶63-68; 4/12/11 Werner Dep. at 115-16, 151-52; Doc. #231-1, PageID##3718-19, 3754-55.

impossible to determine whether the line items that were allegedly omitted were the same items that Smith excluded because they were stored in areas where there was no fire damage. The Court finds that Plaintiffs have failed to submit sufficient evidence to create a genuine issue of material fact concerning whether AEIC omitted these line items "without reasonable explanation."

Moreover, only two weeks elapsed between the date Werner asked Smith to clarify why these line items had been omitted and the date Werner filed the formal Proof of Loss, thereby cutting short opportunities for further informal settlement discussions. Smith Aff. ¶85. On October 20, 2005, AEIC rejected the Proof of Loss, and invoked the appraisal provisions of the insurance contract. *Id.* at ¶87.[7] Under the circumstances presented here, no reasonable jury could find that AEIC acted in bad faith in failing to make a formal offer to settle this portion of the claim.

Finally, Paragon alleges that "AEIC has misrepresented that it did not know of Paragon's purchase of Roy Rhodes Championship Calls prior to the fire." Doc. #208, PageID#2083.[8] Although Mills originally stated that AEIC was unaware of the purchase of these corporate assets prior to the fire, he later recanted this statement. *See* Mills Aff. ¶5; Mills Am. Aff. ¶¶6-7. In any event, as AEIC points

---

[7]  Plaintiffs do not claim that AEIC acted in bad faith by invoking the appraisal process. It is undisputed that the parties disagreed as to the amount of the loss.

[8]  Some of the inventory associated with that purchase was allegedly destroyed in the fire.

out, this alleged misrepresentation is irrelevant to any bad-faith determination, because there is no evidence that the business personal property claim was denied on that basis.

For these reasons, the Court concludes that Plaintiffs have failed to present sufficient evidence from which a reasonable jury could find that AEIC acted in bad faith in handling the business personal property portion of the insurance claim.

### d. Business Interruption Claim

In connection with the business interruption claim, Plaintiffs allege that "AEIC failed to ever respond to the claim for business interruption by making a counter offer or otherwise." Doc. #208, PageID#2082. It is undisputed, however, that Paragon did not submit its business interruption claim until September 8, 2005. Smith Aff. ¶80. Before AEIC had adequate time to review it and respond, Paragon submitted its Proof of Loss, on September 30, 2005. *Id.* at ¶85. AEIC subsequently rejected the Proof of Loss and invoked the appraisal process. *Id.* at ¶¶87-89. Because of the short time period that elapsed between the date Paragon submitted the claim and the date it submitted the Proof of Loss, no reasonable jury could find that AEIC's alleged failure to respond with a counteroffer was unreasonable.

To summarize, although AEIC may not have been as responsive and may not have acted as quickly as Plaintiffs would have liked, it cannot be said that AEIC acted in bad faith. In its Supplemental Memorandum, Plaintiffs actually concede

that 8-12 months is not an abnormal amount of time to process a claim this size. They nevertheless maintain that AEIC failed to act diligently in processing and handling the claim.  Doc. #269, PageID#4964.  This accusation is simply not supported by the record.  Undisputed evidence shows that, from the first date the loss was reported, Paul Smith and AEIC were actively and consistently involved, on an almost daily basis, in attempting to resolve the claim.  Plaintiffs have failed to present sufficient evidence from which a reasonable jury could find that, under the circumstances presented here, the delays at issue were either unreasonable or unjustified.

### 2.    Punitive Damages

Having found that AEIC is entitled to summary judgment on the bad faith claim, the Court need not address the question of whether Plaintiffs are entitled to punitive damages.

## IV.    Conclusion

For the reasons set forth above, the Court:

- OVERRULES AS MOOT Defendant AEIC's Motion to Strike Don A. Little's Affidavit (Doc. #207);
- OVERRULES AS MOOT Plaintiff's Motion to Strike Michael Mills' Affidavit (Doc. #206);
- SUSTAINS IN PART and OVERRULES IN PART Defendant AEIC's Motion to Strike Affidavits of Vicki Miller and Michael Werner (Doc. #219); and
- SUSTAINS Defendant AEIC's Motion for Partial Summary Judgment (Doc. # 192).

Judgment will be issued in favor of Defendant and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: November 15, 2013          _____

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

34